In re Harry HERSMAN, Debtor.

Kathryn BELFANCE, Trustee in Bankruptcy, Plaintiff,

v.

The STANDARD OIL COMPANY, Defendant.

Bankruptcy No. 581–1630.

Adv. No. 581–0926.

United States Bankruptcy Court, N. D. Ohio.

June 4, 1982.

Kathryn Belfance, Akron, Ohio, trustee.

Georgene B. Powell, Akron, Ohio, for defendant.

## FINDING AS TO PREFERENTIAL TRANSFERS

H. F. WHITE, Bankruptcy Judge.

This cause came on upon the filing of a Complaint to Recover Personal Property by Plaintiff, Kathryn A. Belfance, Trustee in Bankruptcy, against Defendant, The Standard Oil Company. A pretrial was had on January 18, 1982.

The parties have agreed that this matter should be determined on the basis of a stipulation of facts and the briefs filed in support of their respective positions.

### FINDINGS OF FACT

Based on the record and the Stipulation of Facts entered into by Plaintiff and Defendant, the facts in this case are as follows:

1. A voluntary petition under 11 U.S.C. Chapter 7 was filed by Debtor, Harry Hersman, on the 30th day of September, 1981. The Standard Oil Co. was scheduled thereon and listed as having an unsecured claim in the amount of $87.39 against the debtor. To date, the Standard Oil Company has failed to file a Proof of Claim.

2. Plaintiff is the duly appointed and acting Trustee of the bankruptcy estate of Harry Hersman.

3. In or about November 1967, Defendant issued a Sohio credit card to Harry Hersman.

4. Ever since Defendant's issuance of its credit card to Harry Hersman, Debtor has from time to time, and until the date of the filing of the Petition in Bankruptcy, purchased gasoline, accessories, and services from Defendant.

5. During the ninety days prior to the filing of the Debtor's Petition in Bankruptcy, Defendant forwarded statements to Debtor for payment of credit card purchases incurred by Debtor, both prior to, as well as during the aforesaid ninety days.

6. During the ninety-day period prior to the filing of the Debtor's petition in bankruptcy, Debtor paid to Defendant the total sum of $635.55, as and for purchases made prior to the ninety-day period in the amount of $406.21, and for purchases made during the ninety-day period in the amount of $229.34.

7. That of the payment made to the Standard Oil Co. on July 16, 1981, the amount of $166.70 represented purchases made on or after June 1, 1981. For the payment made on September 3, 1981, the amount of $106.50 represents purchases made on or after July 20, 1981.

8. Standard Oil Company extended additional credit to the debtor in the amount of $10.20 after the first payment. After the second payment made on September 3, 1981, the creditor extended an additional $57.30 in new credit to the debtor.

## ISSUES

The issues presented in this case are (1) whether the transfers in question were made on account of an antecedent debt, (2) whether a contemporaneous exchange of value occurred so that 11 U.S.C. Section 547(c)(1) applies, (3) whether the debts in question were incurred within forty-five days of the transfer so that 11 U.S.C. Section 547(c)(2) applies and (4) whether 11 U.S.C. Section 547(c)(4) applies so as to provide an offset for new value given against any preferential transfers found to be avoidable under 11 U.S.C. Section 547(b).

## LAW

### A.

Plaintiff, Kathryn A. Belfance, Trustee in Bankruptcy (hereinafter referred to as "Trustee") has commenced this action to recover money paid to Defendant, The Standard Oil Company (hereinafter referred to as "Sohio") by debtor, Harry Hersman. Trustee alleges that the payment of these monies to Sohio constitutes a preference avoidable pursuant to 11 U.S.C. Section 547(b).

A trustee in bankruptcy may have avoided under Section 547 any transfer which is shown to have been made to a creditor in payment of an antecedent debt within 90 days prior to the filing of a bankruptcy petition when the debtor is insolvent. In order to have the transfer avoided, it must also be shown that the transfer resulted in the creditor receiving a greater percentage of his claim paid than if the transfer had not been made. 11 U.S.C. Section 547(b). Defendant argues that the second element of the preference statute—the requirement that there be an antecedent debt—is not present herein. If so, the trustee's complaint may not be granted.

In this regard, Sohio contends that the payments made by debtor were on account of current expenses and that they corresponded with a like transfer of goods to the debtor. From the various exhibits submitted by the Trustee and Sohio, it appears that debtor paid the full amount billed him by Sohio each month on or prior to the payment date. However, and as noted by Sohio in its brief, the monthly payment so made could be for gasoline received several months prior to the billing.

In *In Re Kelley*, 3 B.R. 651 (Bkrtcy.E.D. Tenn.1980), the same defense as presented herein was raised: that is, that the debt in question was not antecedent to the transfer. The Court looked to the date that the transfer was made and the date that the debt was incurred. Finding that the latter date preceded the former, the debt was found to be antecedent.

No question has been raised as to the fact that the transfers in question were made on July 16, 1981 and September 3, 1981. In interrogatories propounded by Plaintiff, Defendant stated in her Answer to Interrogatory Number 6 that "Sohio's Credit Card Center received a payment on July 16, 1981 and on September 3, 1981." Said payments were in the respective amounts of $279.91 and $355.64.

There is disagreement, however, as to when the debt was incurred. The trustee relies on this Court's decision in *In Re McCormick*, 5 B.R. 726, 2 C.B.C.2d 1145 (Bkrtcy.N.D.Ohio 1980) for her argument that the debt was incurred at the time that the debtor-creditor relationship was established in November, 1967. Sohio, on the other hand, contends that the debt was incurred when debtor received the gasoline during the period between May 11, 1981 through August 2, 1981.

In *In Re McCormick, supra*. this Court was dealing with an installment loan. The argument was made, and rejected, that the debt therein was incurred each month when the installment payment became due. Instead, it was held that the debt in such a case was incurred at the time that the loan agreement was first entered into. The holding in *McCormick* does not apply in the instant case. The original agreement between debtor and Sohio in November, 1967 did not obligate debtor to repay any fixed sum of money to Sohio over a period of time. Instead, it merely provided the terms by which both parties agreed to be bound in the event debtor used his Sohio credit card.

It has been stated that a "debt is incurred when it becomes a legally binding obligation on the debtor." Levin, *An Introduction to the Trustee's Avoiding Powers*, 53 Am.Bankr.L.J. 173 (1979). And also, that a "debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt..." 4 Collier on Bankruptcy, Section 547.38 (15th ed. 1981); *In Re Ray W. Dickey & Sons, Inc.*, 11 B.R. 146, 7 B.C.D. 901 (Bkrtcy. N.D.Tex.1980).

Here, the debt was incurred each time the debtor went to a Sohio gas station and received gasoline or other products through the use of his credit card. At that time, debtor obtained a property interest in the product so received. Moreover, debtor then became legally obligated to Sohio for the amount of gasoline he then purchased.

As the debts were incurred each time debtor used his Sohio credit card, these debts were, of necessity, incurred prior to the time that the debtor paid his monthly bill based on the individual credit card charges. As such, the transfer of these monies to Sohio was on account of an antecedent debt. As Sohio has not disputed the presence of any other element essential to a preference, the payments in question were preferential pursuant to 11 U.S.C. Section 547(b). Whether the preferences may be avoided depends on the applicability of the exceptions to avoidance urged by Sohio.

## B.

A finding that a transfer appears to be preferential does not necessarily lead to a finding that the transfer may be avoided. Subsection (c) of 547 provides six instances where a preferential transfer may not be avoided. Sohio relies on three of these exceptions to prevent the avoidance of the transfers made to it. The subsections urged state that:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

(3) ...

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor...

The first exception is the "contemporaneous exchange" exception. In support of this exception, Sohio argues that the payments received by it correspond with an equal transfer of goods. Debtor's intent

that the payments be a contemporaneous exchange is said to be evidenced by the fact that, for the year prior to the filing of his petition in bankruptcy, debtor always paid the full amount billed him prior to the payment date.

■ Intent that the exchange of value be contemporaneous is a critical element of this exception to avoidance. *In Re Arnett*, 13 B.R. 267 (Bkrtcy.E.D.Tenn.1981). "The key inquiry, therefore, is whether the parties at the outset intended the exchange to be contemporaneous." 4 Collier on Bankruptcy, 547.37 (15th ed. 1981) at 547–119.

The legislative history for the exception discusses the kind of transaction which it was intended to cover. Noting that payment by check is a credit transaction, it is stated:

> However, for the purposes of this paragraph, a transfer involving a check is considered to be 'intended to be contemporaneous', and if the check is presented for payment in the normal course of affairs ... that will amount to a transfer that is 'in fact substantially contemporaneous.' H.R.Rep.No.95–595, 95th Cong., 1st Sess. 373 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

When paying for goods or services, most people consider such a payment a cash transaction. Despite this, the transaction generally remains a credit transaction until such time as the check is paid out. This exception therefore recognizes the fact that most people do consider and intend payment by check to be a cash transaction and insulates such a transaction from preferential attack.

The instant situation is highly unlike the payment by check situation. Where goods are paid for by check, the payor has funds in the banking institution upon which the check is drawn when he makes the check payable to the person furnishing the goods. The payee need only present the check for payment. In the instant situation, however, debtor used a Sohio credit card to pay for the goods. When using a credit card to pay for goods, a consumer generally is seeking that which its name implies—the extension and receipt of credit. By using a credit card, the credit card consumer does not intend a contemporaneous exchange for value. Instead, what is generally intended is the receipt of goods or services presently and time to pay for the same in the future. The time to pay may be as short as the time regularly involved here, that is, approximately a month to two months. Nonetheless, time to pay is a generally accepted part of the extension of credit through use of a credit card. Indeed, it is a necessary element as time to process and bill for the charges used is needed by the credit card company.

Despite the fact that the usual credit card transaction cannot be considered to fall within this exception, Sohio could attempt to prove that its relationship with debtor was different and that the transactions were intended, from the outset, to be a contemporaneous exchange of value. Sohio has attempted to show this by pointing to the fact that for the year prior to the filing of bankruptcy, the debtor always paid the full amount he was billed each month. This Court does not believe that this manner of payment evidences an intent on the part of the debtor to treat an otherwise credit transaction as a contemporaneous exchange of value transaction. Instead, what is shown by this pattern of payment is merely a debtor who chose over a period of time to comply with the terms of the credit card agreement he had with his creditor. Debtor's manner of payment of a debt already incurred does not show that when that debt was incurred, months earlier, debtor then intended there to be a "contemporaneous exchange of value".

■ In the absence of evidence to the contrary, this Court finds that the debtor did not intend to have a contemporaneous exchange of value with Sohio when he used Sohio's credit card for the purchase of Sohio products. As such, 11 U.S.C. Section 547(c)(1) does not apply herein.

■ 11 U.S.C. Section 547(c)(2) deals with ordinary course of business or financial affairs transactions. In order to come

within this exception, all four of the elements set forth within the subsection must be found to be present. *In Re Gulf States Marine, Inc.*, 6 B.C.D. 79 (Bkrtcy.W.D.La. 1980). Trustee has only contested the second element of this exception. Accordingly, the Court finds that the other elements necessary to this exception are present. The Court will concern itself only with whether the transfer was "made not later than 45 days after such debt was incurred..." 11 U.S.C. Section 547(c)(2)(B).

Trustee's argument with regard to this element is based once again on her reliance on *In Re McCormick, supra,* as authority for when the debts in question were incurred. As this Court has earlier held, these debts were not incurred when the initial debtor-creditor relationship was established between the parties in November, 1967. Instead, the debts were incurred each time debtor went to a gas station and purchased gasoline through the use of a credit card.

With this in mind, it must then be determined whether the payments in question were made within forty-five days after the debt was incurred. In order to come within this requirement as to the July 16, 1981 payment made by debtor, the debts must have been incurred by June 1, 1981. As to the September 3, 1981 payment, the debt would have had to have been incurred by July 20, 1981 to come within the exception.

In a brief submitted by Sohio, Sohio states that $166.70 of the first payment represented purchases, and thus debts incurred, after June 1, 1981. One Hundred Six and 50/100 Dollars of the September 3, 1981 payment is said to represent purchases made after July 20, 1981. Trustee did not object to these figures. As the transfers in question were made partially in payment of debts incurred within forty-five days of the transfer, 11 U.S.C. Section 547(c)(2) applies to the extent of the debts incurred within forty-five days, that is, to the extent of $166.70 on the first transfer and to the extent of $106.50 on the September 3, 1981 transfer.

As to the balance of these transfers, Sohio argues that this Court should consider the nature of the debt and manner of payment in light of the intention of the drafters of the Bankruptcy Code to insulate ordinary business or financial affairs payments and hold that the entirety of both transfers is excluded from avoidance.

It has been stated that the forty-five day rule set out in this section is more rigid and strict than the former "current expense" rule. Kaye, *Preferences under the New Bankruptcy Code*, 54 Am.Bankr.L.J. 197 at 202, 203 (1980). Despite this, Mr. Kaye in his article appears to recognize that the section must nonetheless be applied so as to avoid all preferential debts incurred beyond the forty-five day period. *Id.*

A strict reading of this section comports with general law dealing with the interpretation of statutes. Where, as is the case here, the language in a statute is clear and unambiguous, the language is to be interpreted as it reads. In such a case, it is to be presumed conclusively that the terms of the statute express the legislative intention. See generally 73 Am.Jur.2d, *Statutes* Section 194 (1974).

■ The language in question unambiguously sets forth a forty-five day requirement. Unless the debt was incurred within forty-five days of payment, the transfer is to be avoided where otherwise preferential. Sohio admits that as to the first transfer, $113.21 of the debt was incurred prior to the forty-five day period. As to the second transfer, Sohio has admitted that $249.14 represents debts incurred prior to the commencement of the forty-five day period. As such, these transfers do not come within the exception under 11 U.S.C. Section 547(c)(2) and may be avoided.

The final exception raised by Sohio is that set forth in 11 U.S.C. Section 547(c)(4) —the "new value" exception. Under this exception, a preference may not be avoided to the extent that the preferred creditor advanced new value to the debtor after the preferential transfer.

This exception to avoidance is discussed in Richard Levin's article, *An Introduction to the Trustee's Avoiding Powers*, 53 Am. Bankr.L.J., *supra,* at 187. It is therein stated that:

> This exception, commonly known as the "new-value" or "net-result-rule" exception, insulates from preference attack a transfer to a creditor to the extent that the creditor thereafter replenishes the estate. The new value given must be unsecured and may only be netted against a previous preferential transfer, not a subsequent preferential transfer. In other words, the net-result rule does not apply to the 90-day preference period as a whole. Rather, each transfer must be examined independently to determine whether the creditor later replenished the estate.

Sohio contends that, as to the first transfer, it extended additional unsecured credit to debtor in the amount of $10.20 prior to the 45-day cutoff date for the second payment of July 20, 1981. As to the second transfer, Sohio states that it extended new value to debtor prior to or on September 30, 1981 in the amount of $57.30.

The Trustee's argument with regard to these claims does not dispute the validity of the figures asserted or the fact that the additional credit was extended after the preferential transfers were made. Instead, trustee argues that application of this section defeats the purpose behind the preference section, that is, the assurance of equality of treatment among creditors.

To accept trustee's argument, this Court would have to "write-out" of the Bankruptcy Code this particular exception to the avoidance of preferential transfers. Such a task is for Congress and not for a bankruptcy court. No argument has been made that this section is not otherwise applicable. This Court finds that the exception is applicable to the extent of the new value furnished, that amount being $67.50.

Therefore, it is the conclusion of the Court that the transfers in question were preferential pursuant to 11 U.S.C. Section 547(b). Of the monies received preferentially, $273.20 represents transfers which fall within the exception set forth in 11 U.S.C. Section 547(c)(2) and may not be avoided.

Additionally, Sohio furnished new value to debtor after the transfers were made in the amount of $67.50. This amount may not be avoided pursuant to 11 U.S.C. Section 547(c)(4). Accordingly, the preferential transfers made to Sohio may be avoided to the extent of $294.85.