In re SACO LOCAL DEVELOPMENT CORP., Leather Comfort Corporation, Kirstein Leather Co. d/b/a Saco Tanning Corp., Kirstein Split Corporation, Debtors.

Roderick R. ROVZAR, Trustee, Plaintiff,

v.

BIDDEFORD & SACO BUS GARAGE, INC., Defendant.

Bankruptcy Nos. 281–00151 to 281–00154.
Adv. No. 281–0230.

United States Bankruptcy Court,
D. Maine.

Dec. 15, 1982.

See also, Bkrtcy., 25 B.R. 880.

Gregory Tselikis, Charles Miller, Portland, Me., for plaintiff.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

By this proceeding the bankruptcy trustee seeks to recover, as preferential transfers, two payments made by the debtor[1] to the defendant, Biddeford and Saco Bus Garage, Inc., within 90 days before the debtor filed its petition for relief in this court.

The defendant (hereinafter referred to as B & S Garage) for many years maintained and repaired the debtor's vehicles.

Two separate transactions are involved here. The first transaction concerned the debtor's International truck, which was delivered to B & S Garage for repairs on November 11, 1980. The work was completed on December 5, 1980 and B & S Garage mailed its invoice on that date. The invoice, in the amount of $972.76, was received by the debtor on December 11, 1980 and paid by check dated January 16, 1981. The check was recorded on B & S Garage books on January 22, 1981 and cleared the bank on January 26, 1981. The debtor filed for relief in this court on March 26, 1981.

The second transaction involved the debtor's Ford truck. The Ford was delivered to B & S Garage on December 5, 1980 for repair. The work was completed early in January of 1981. The invoice for this work, in the amount of $785.61, was mailed on January 5, 1981. There is no evidence of when the invoice was received by the debt-

---

1. All references to the debtor are to Saco Tanning Division of Kirstein Leather Company.

or; it was, however, paid by check dated February 6, 1981. The check was received and posted on B & S Garage's books on February 19 and cleared by the bank on February 23.

The trustee argues that these two payments were avoidable transfers within the meaning and intent of 11 U.S.C. § 547(b).[2]

B & S Garage argues that the transfers were contemporaneous exchanges for new value in payment of debts incurred in the ordinary course of business, made not later than 45 days after the debts were incurred and that the payments were made in ordinary course and according to ordinary business terms; and, therefore, under 11 U.S.C. § 547(c)(1) and (2), the trustee may not avoid the transfers.[3] B & S Garage also argues that it did honest work and always exercised good faith and that it is grossly unfair to require the return of these payments to the trustee. B & S Garage's answer does not otherwise deny the allegations in the trustee's complaint,[4] and, therefore, the allegations of the trustee's complaint are admitted. Fed.R.Civ.P. 8(d).

## DISCUSSION

The trustee has the burden of proving that the transfers are preferential. "The law places upon the trustee the unmistakable burden of proving by a fair preponderance of all the evidence every essential, controverted element resulting in the composite preference." 4 *Collier on Bankruptcy* ¶ 547.55, at 547–160.17 (15th ed. 1982). The trustee in this proceeding has met this burden through the uncontroverted allegations of his complaint.

The trustee having proved the elements of avoidable preferences, we will now address the exceptions to avoidability contained in section 547(c). Because the section 547(c) exceptions do not tend to controvert the trustee's prima facie case, they constitute defenses which must be set forth affirmatively. Bankruptcy rule 708; Fed. R.Civ.P. 8(c); 2A *Moore's Federal Practice* ¶ 8.27, at 8–250 (2d ed. 1982). The defendant-transferee bears the burden of proving that he is entitled to the benefit of the exceptions. Evidence to establish the exception is usually particularly within the knowledge of the transferee. He will know, for example, when a debt was incurred and when payment (the transfer) was received. Generally, when an exception to a statute appears in a different section or subdivision from the section containing the enacting words, the party claiming the benefits of the exception bears the burden of proving that he qualifies for the exception. *Schlemmer v. Buffalo, Rochester, & Pittsburg Railway Co.*, 205 U.S. 1, 27

---

2. 11 U.S.C. § 547(b), as pertinent here, provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; . . .
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

3. Section 547(c), as pertinent here, provides: The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange;
(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms; . . . .

4. The trustee's complaint alleges the elements of a preferential transfer, 11 U.S.C. § 547(b).

S.Ct. 407, 51 L.Ed. 681 (1906); 29 Am.Jur.2d *Evidence* § 147.

■ In order to qualify for the exception provided by section 547(c)(1), the creditor must prove that the parties intended the transfer to be a contemporaneous exchange. "The intent of the debtor and creditor to make a contemporaneous exchange is critical." *In re Arnett,* 13 B.R. 267, 269, 7 B.C.D. 1222, 1223, 4 C.B.C.2d 1365, 1367 (Bkrtcy.E.D.Tenn.1981) *aff'd* 17 B.R. 912, 5 C.B.C.2d 1469 (D.C.E.D.Tenn.1982); *see also In re Hersman,* 20 B.R. 569, 9 B.C.D. 577 (Bkrtcy.N.D.Ohio 1982); 4 *Collier on Bankruptcy* ¶ 547.37, at 547–119 (15th ed. 1982). B & S Garage did not introduce any evidence to establish that the transfers were intended to be contemporaneous exchanges for new value. Furthermore, it is apparent from evidence produced by the trustee that the transfers were not in fact substantially contemporaneous exchanges. B & S Garage, therefore, does not qualify for the exception provided by section 547(c)(1).

All four elements of section 547(c)(2) must be satisfied to qualify an otherwise avoidable preference for this exception. *In re McCormick,* 5 B.R. 726, 6 B.C.D. 889, 2 C.B.C.2d 1145 (Bkrtcy.N.D.Ohio 1980). Section 547(c)(2)(B) requires that the payment be made no later than 45 days after the debt was incurred. In order to apply section 547(c)(2), it is necessary to determine when the payments were made and when the debts were incurred.

■ Section 547(c)(2) was intended to "define a special class of contemporaneous exchanges. Compare 11 U.S.C. § 547(c)(1)." *In re Bowen,* 3 B.R. 617, 619, 6 B.C.D. 254, 255, 1 C.B.C.2d 1090, 1092 (Bkrtcy.E.D.Tenn.1980). The report of Congress of the final draft of the Code provided:

Contrary to language contained in the House report, payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2).

124 Cong.Rec. H11,097 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6436, 6457; *id.* at S17,414 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.Code Cong. & Ad.News 6505, 6526. The date of delivery of a check is the critical date for the purpose of computing the 45-day period of section 547(c)(2).[5] *See In re Garland,* 19 B.R. 920, 928, 8 B.C.D. 1357, 1362 (Bkrtcy.E.D.Mo. 1982).

■ The debts are incurred when services are rendered, not when an invoice is sent. Put another way, debts are incurred "when a debtor first becomes legally bound to pay." *Barash v. Public Finance Corp.,* 658 F.2d 504, 510 (7th Cir.1981). In this proceeding the debts were incurred no later than when B & S Garage completed the repair work on the vehicles.

■ B & S Garage completed work on the International truck on December 5, 1980. On this date the debt was incurred. A check in the amount of $972.76 in payment of the debt was received on January 22, 1981, forty-eight days later. The transfer, therefore, did not occur within 45 days after such debt was incurred as required by section 547(c)(2)(B).

The record does not disclose the exact date when work was completed on the Ford truck. However, one of B & S Garage's mechanics testified that the truck was on the garage premises on January 1, 1981. Upon the evidence the court finds that the debt was incurred no later than January 2, 1981. The debtor's check in the amount of $785.61 in payment of this debt was received on February 19, 1981, forty-seven

---

**5.** It must be observed that this differs from the rule applied in determining whether a transfer is preferential under section 547(b). In determining whether a transfer was made within 90 days before the date of filing of the petition under section 547(b)(4)(A) when payment is made by check, it is the date upon which the drawee bank honors the check that the transfer occurs. *In re Duffy,* 3 B.R. 263, 6 B.C.D. 88, 1 C.B.C.2d 641 (Bkrtcy.S.D.N.Y.1981); *In re Sportsco, Inc.,* 12 B.R. 34, 7 B.C.D. 1025 (Bkrtcy.D.Ariz.1981).

days later. This transfer, therefore, did not occur within 45 days after the debt was incurred.

From the above it is apparent that B & S Garage does not qualify for the exceptions contained in section 547(c).

■ B & S Garage also raises the issue of its honesty and good faith and the unfairness and hardship to it if required to return these preferential payments. The court, as was Congress in enacting section 547 of the Code, is sensitive to the defendant's position. However, the purpose of the legislation must be kept in mind: "the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–178, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6138. Whether B & S Garage dealt with the debtor in good faith is not a factor to be considered.

> It has never been contended that preference recovery is fair to the preferred creditor; it is those creditors which did not receive payment within the preference period that are aided by a preference recovery action. Further, the creditor's good faith and lack of knowledge of the debtor's insolvency are no longer defenses to this type of action.

*In re Anders,* 20 B.R. 468, 469 (Bkrtcy.M.D. Fla.1982).

Judgment will be entered for the plaintiff/trustee for the total amount of the preferential transfers.