In re Karl Russell SANBORN Glennis Marie Sanborn, Debtors.

Karl Russell SANBORN Glennis Marie Sanborn, Plaintiffs,

v.

BANGOR FEDERAL CREDIT UNION, Defendant.

Bankruptcy No. 182–00223.
Adv. No. 182–0220.

United States Bankruptcy Court, D. Maine.

May 2, 1983.

Louis H. Kornreich, Gross, Minsky, Mogul & Singal, Bangor, Me., for defendant.

Richard A. Estabrook, Bangor, Me., for plaintiffs.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The debtors, Karl and Glennis Sanborn, seek a declaration under section 522(h) of the Bankruptcy Code that sums automatically deducted from Glennis Sanborn's salary and received by the defendant, Bangor Federal Credit Union, are avoidable preferences. 11 U.S.C.A. § 522(h) (1979). The credit union asserts that the deductions are protected from avoidance by section 547(c)(2). 11 U.S.C.A. § 547(c)(2) (1979). In addition, the credit union argues that a debt at issue in this proceeding is nondischargeable under section 523(a)(2). 11 U.S.C.A. § 523(a)(2) (1979). The court concludes that the debtors have established all the elements of an avoidable preference and that the credit union has failed to show that it is entitled to the section 547(c)(2) exception. Because the period in which to file complaints to determine the dischargeability of debts expired on October 12, 1982, the credit union's dischargeability counterclaim must be dismissed.

1. The record does not specify the original amounts of these loans.

2. Section 522(g)(1) provides:
Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the

The debtors entered into three separate loan transactions with Bangor Federal Credit Union on October 27, 1981, January 8, 1982, and May 20, 1982.[1] In order to repay the loans, Glennis Sanborn agreed to have $59.00 per week automatically deducted from her salary. On June 24, 1982, Glennis Sanborn revoked her payroll deduction authorization; however, the credit union continued receiving payments. The debtors filed their joint petition under chapter 7 on July 7, 1982. On that date, the debtors owed the credit union $371.90 on the October 27 loan, $4.57 on the January 8 loan, and $357.16 on the May 20 loan.

Section 522(h) provides:

The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

Section 522(h) allows the debtor to avoid a transfer on three conditions: 1) the debtor could have exempted the property under section 522(g)(1),[2] that is, the property qualifies for an exemption under section 522(b), the transfer was involuntary, and the debtor did not conceal the property; 2) the transfer was avoidable by the trustee; and 3) the trustee did not attempt to avoid the transfer.

The credit union does not seriously dispute that the debtors have met the first condition. The debtors contend that the property qualifies for an exemption under

extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property. . . .

section 522(b) of the Bankruptcy Code and title 14, section 4422(15) of the Maine Statutes. 11 U.S.C.A. § 522(b) (1979); Me.Rev. Stat.Ann. tit. 14, § 4422(15) (Supp.1982–1983).[3] The debtors are only seeking the return of transfers occurring after June 24, 1982, the date on which Glennis Sanborn revoked the payroll deduction authorization. The credit union does not dispute that deductions after that date were involuntary. Finally, the debtors did not attempt to conceal the property.

■ The third condition has been met because the trustee has not attempted to avoid the transfers. The credit union argues, however, that the debtors have failed to satisfy the second condition because the transfers are not avoidable by the trustee under section 547. The credit union does not contend that the debtors have failed to demonstrate all the elements of an avoidable preference under section 547(b),[4] but instead asserts that the transfers which it received are excepted from avoidance by section 547(c)(2).

Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

The section 547(c) exceptions are affirmative defenses which must be proven by the defendant—transferee. *Rovzar v. Biddeford & Saco Bus Garage, Inc. (In re Saco Local Development Corp.),* 25 B.R. 876, 878–79 (Bkrtcy.D.Me.1982). In this case, the credit union must establish all four elements of section 547(c)(2). *Id.* at 879; *Belfance v. Bancohio/National Bank (In re McCormick),* 5 B.R. 726, 730 (Bkrtcy.N.D. Ohio 1980). Here elements (A), (C), and (D) are present, but element (B) is not.

Section 547(c)(2)(B) requires the creditor to show that the preferential transfer was "made not later than 45 days after such debt was incurred." A debt is incurred under this section "when a debtor first becomes legally bound to pay." *Barash v. Public Finance Corp. (In re Dennis),* 658 F.2d 504, 510 (7th Cir.1981); *see Rovzar v. Biddeford & Saco Bus Garage, Inc.,* 25 B.R. at 879. The Sanborns first became legally obligated to pay on October 27, 1981, January 8, 1982, and May 20, 1982, the dates when they entered into the three loan transactions. Thus, the debts were incurred on those dates.

3. Section 522(b) authorizes a state to provide an exemption schedule to be used in federal bankruptcy court. Pursuant to this authority, the Maine Legislature enacted section 4422. Section 4422(15) allows debtors to exempt their "aggregate 'interest, not to exceed in value $400, in any property, whether or not otherwise exempt under this section." As joint debtors, the Sanborns may exempt up to $800 under this provision.

4. Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;

(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The credit union asserts that it qualifies for the section 547(c)(2) exception because all the preferential transfers were made within 45 days of May 20, 1982, the date the third debt was incurred. However, the credit union has failed to show that the payments related specifically to the May 20, 1982 debt and were not simply payments on the total outstanding balance. Under these circumstances, it is impossible to conclude that the transfers were in payment of the May 20, 1982 loan. In the absence of evidence to the contrary, payments are allocated to debts in the order in which the debts were incurred. *See In re Rustia,* 20 B.R. 131, 135 (Bkrtcy.S.D.N.Y. 1982). Thus, the payments in question are allocated to the October 27, 1981 debt, on which an outstanding balance of $371.90 remains, and the 45 day requirement is not satisfied. The credit union has failed to establish the section 547(c)(2) affirmative defense.

On December 2, 1982, the credit union filed its answer together with a counterclaim asserting that the May 20, 1982 debt is nondischargeable under section 523(a)(2) of the Bankruptcy Code. The order and notice for meeting of creditors dated July 28, 1982, stated that "October 12, 1982, is fixed as the last date for the filing of a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(c)." Because the credit union failed to file its counterclaim by that date, the counterclaim must be dismissed.

An appropriate order will be entered.