In the Matter of GLOBAL INTERNATIONAL AIRWAYS CORPORATION, Debtor.

GLOBAL INTERNATIONAL AIRWAYS CORPORATION, Plaintiff,

v.

DEPARTMENT OF the UNITED STATES AIR FORCE, Defendant.

Bankruptcy No. 83–02765–2–3–11.
Adv. No. 85–0608–2–3–11.

United States Bankruptcy Court, W.D. Missouri, W.D.

Aug. 18, 1987.

---

followed by a jurisdictional ruling or assertion by a court of competent jurisdiction.

**9.** *Id.*

Ronald S. Weiss, Berman, DeLeve, Kuchan, and Chapman, Kansas City, Mo., for plaintiff.

E. Eugene Harrison, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING THE PLAINTIFF'S COMPLAINT FOR RECOVERY OF ALLEGEDLY PREFERENTIAL TRANSFERS

DENNIS J. STEWART, Chief Judge.

This action, an action brought by a chapter 11 debtor for the purpose of recovering alleged preferences under section 547 of the Bankruptcy Code, has been submitted to the court for decision on the basis of a stipulation of facts. In submitting the case on the basis of this stipulation, the parties made it clear to the court that they did not desire to submit any evidence *dehors* the written stipulation. For they declined an express opportunity extended to them by the court for an evidentiary hearing.[1] In consequence of the submission of that stipulation as the basis for decision, the court prepared a written memorandum as a proposed basis for final judgment. A copy of those proposed findings of fact and conclusions of law is attached hereto and incorporated herein by reference as fully as if set out herein verbatim. Previously, the abovementioned memorandum and attachments were circulated to counsel for the parties, together with an order directing them to show cause why judgment should not be entered denying the plaintiff's complaint for recovery.

■ In circulating the memorandum, it was the court's tentative decision that, if the stipulated "dates of transaction" were the equivalent of the dates on which the duty to pay arose and the date of delivery of the check constituted the date of payment, as the current of authority indicates,[2] then two of the challenged payments, totaling $55,000[3], were made within the 45-day period specified by section 547(c)(2) of the Bankruptcy Code and were therefore not recoverable as preferences. For that section exempts payments made in the ordinary course of business within 45 days of the date when the duty to pay arose. One of the checks, in the amount of $5,000, was

---

1. The court convened a hearing on October 6, 1986, at which time the parties simply offered their written stipulation in evidence and otherwise requested leave to file briefs at a later time.

2. See this court's decision in *Global International Airways Corp. v. Evergreen Air Center, Inc.*, 80 B.R. 990 (Bkrtcy.W.D.Mo.1987), in which it is observed that the majority of appellate courts hold that the date of delivery of the check is the date of payment for the purposes of section 547(c)(2) and that the Supreme Court has recently denied certiorari to review one of those appellate court decisions.

3. In its prior, tentative findings, this court limited this amount to $52,514.33—because the $5,000 payment corresponded only to two purchases made on June 22, 1983, totaling $2,514.33. But, according to the considerations expressed in the further text of this memorandum, the remainder of the $5,000 had to be applied—if to anything—to later payments even more certainly within the 45-day period from the date when the check was delivered and honored.

delivered on August 1, 1983, and honored the following day by the drawee bank. The other one was in the sum of $50,000 and was delivered on August 19, 1983, and honored on August 22, 1983. The court, in its tentative findings, found that the respective "transaction" dates—as stipulated by the parties—were as follows:

(1) the $5,000 check delivered on Aug. 1, 1983

(check no. 4321) ....... June 22, 1983

(2) the $50,000 check delivered on Aug. 19, 1983

(check no. 5597) ....... July 15, 1983

The first check—4321—was, according to the stipulation, applied against invoice POL 83–556. The latest "transaction date" on POL 83–556 was June 22, 1983, when two purchases of fuel were made totaling $2,514.33. In the absence of evidence to the contrary—which the parties, as observed above, declined an explicit opportunity to offer—the court interpreted the date of the last transaction on the invoice as that on which the duty to pay for a series of "transactions" arose. In response to the court's preliminary finding as to the date on which the duty to pay arose, the plaintiff contended that invoice POL 83–556 contained "transactions" of fuel purchases dating back to May 20, 1983, and that May 20, 1983, must therefore be deemed the date on which the duty to pay arose. Plaintiff cites decisional authority to the effect that, in the absence of evidence to the contrary, the law presumes application of payments to the oldest debts first. See *Matter of Georgia Steel, Inc.,* 38 B.R. 829 (Bkrtcy.N.D.Ga.1984); *In re Sanborn,* 29 B.R. 655 (Bkrtcy.D.Me.1983); *Matter of Fasano/Harriss Pie Co.,* 43 B.R. 871 (Bkrtcy.W.D.Mich.1984). The "first-in, first-out" ruling admittedly applies, however, only in the absence of evidence that the payments were otherwise to be applied. "[I]f the credit merely appears in the general account and *there is no evidence of any understanding to the contrary,* the

credit will be considered as applied to debts in the order of time in which the debts occurred ..." *Matter of Fasano/Harriss Pie Co., supra,* at 879. (Emphasis added.) *"In the absence of evidence to the contrary,* payments are allocated to debts in the order in which the debts were incurred." *In re Sanborn, supra,* at 658. (Emphasis added.) In this instance, however, there is evidence to the contrary. It is stipulated by the parties that the Air Force regulation under which "Global became authorized to purchase USAF owned aviation fuel and oil on credit" (stipulation of fact no. 3 filed September 11, 1986) required the submission of an "authorized credit letter." This document, in pertinent part, provided that estimated payments of $100,000 or more per month (as appears to be the case at bar [4]) must be made bimonthly and "[t]he second estimated payment will cover issues made during the period from the 16th day until the end of the given month, and will be remitted on or before the 10th day of the month following the month in which such issues were made." In respect of check 4321, it was not issued until July 27, 1987. Thus, if, as the parties have otherwise stipulated, it applies to June 1983 payments, it must be presumed to apply only to transactions after June 16, 1983. And, with respect to invoice POL 83–556, June 22, 1983, is the only transaction date subsequent to the 16th of that month. When the check was both delivered and honored within the ensuing 45 days, this court must conclude that the section 547(c)(2) defense applies to check no. 4321.[5]

### Check 5597

In a similar manner, the court preliminarily found in its attached proposed memorandum that the duty to pay arose on July 15, 1987, a date less than 45 days in advance of the date on which the $50,000 check was delivered (August 19, 1983), and

---

**4.** The payments which are challenged in the action at bar total more than $100,000 in the month of August 1983, and nearly $100,000 in September 1983. Together with unchallenged purchases for September 1983, there would be

more than $100,000 in total purchases during September 1983.

**5.** See note 2, *supra.*

that on which it was honored (August 22, 1983). Again, the plaintiff contends that: "the Court's chart applies check 5597 in the amount of $50,000 against transactions occurring, at the latest, July 15, 1983. However, check 5597 was the first check to be applied against fuel purchases constituting invoice 83–616, and a logical application would apply the check to the first purchases, not the last fuel purchase

Invoice POL 83–616, however, contains a list of purchases ("transaction dates") dating from June 10, 1983, to July 15, 1983. Check number 5597 was dated August 12, 1987. Thus, if it applied to the prior months' transactions, it would ordinarily, under the foregoing regulations, have applied to those occurring after July 16, 1987. But there are not transactions recorded on invoice POL 83–616 subsequent to July 16, 1983. It must therefore be determined that the payment applies to purchases made as late as July 15, 1983, and no earlier than July 7, 1983, because, between those two dates, some $54,486.49 in "transactions" took place. July 7, 1983, was fewer than 45 days in advance of the date of delivery of the check—August 19, 1983—and 45 days in advance of the honoring of the check, August 22, 1983.[6] Accordingly, the court is constrained to hold that the section 547(c)(2) defense is also applicable to this check.

### The "subsequent value" defense

■ Section 547(c)(4) of the Bankruptcy Code provides that:

"The trustee may not avoid under this section a transfer ... to or for the benefit of a creditor to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor."

Under this section, the remainder of the recovery which is sought by plaintiff—a total of $218,996.60—regardless of whether the defense provided by section 547(a)(2), *supra*, applies to any transfers except checks 4321 and 5597, cannot be recovered by the plaintiff. In this regard, the following analysis obtains.

### *September 22, 1983 payment*

According to the graph of payments on the attached preliminary findings of fact and conclusions of law, the transactions between the debtor and the defendant, insofar as they are challenged as preferential transfers, were completed by September 22, 1983. On that date, the check was honored for the last payment to the defendant in the sum of $67,107.67. But, according to the stipulated facts, the following subsequent value was given by the defendant to the plaintiff:

| | |
|---|---|
| five purchases from the Air Force on October 14, 1983 (stip. # 5) ...... | $36,145.73 |
| two purchases from the Navy on September 28, 1983 (stip. # 8) ....... | 35,676.90 |
| TOTAL ..................... | $71,822.63 |

It is stipulated that these purchases were not paid for. Thus, there was clearly sufficient subsequent value to negative the $67,107.67 payment made on September 22, 1983.

### *September 19, 1983 payment*

The penultimate payment was made on September 19, 1983, in the sum of $11,888.93. After that date, two purchases were made by debtor from the defendant on September 21, 1986, in the sum of $29,856.96. (Stip. # 8) The subsequent value was thus sufficient to wipe out the recoverability of $11,888.93.

### *August 19, 1983 payment*

A payment of $70,000 was made to the defendant by means of a check which was honored on August 19, 1983. Nineteen

---

**6.** Thus, it would seem from the literal wording of section 547(c)(2)—which applies to a payment "made not later than 45 days after such debt was incurred"—that, even if the date of honoring of the check constitutes the date of payment, payment was made within the 45–day period. But, as noted above in note 2, *supra*, the better rule is that the date of delivery constitutes the date of payment.

purchases were made thereafter of the defendant from August 24, 1983, to September 13, 1983, in the sum of $92,114.92. (Stip. # 5). Clearly, the latter sum exceeds the former sum by $22,114.92.

### August 2, 1983, payment

On August 2, 1983, a payment of $70,000 was made by debtor to defendant. This payment was succeeded by the following purchases:

| | |
|---|---|
| (1) three purchases on August 8 and 9, 1983, (AF83–675) | $8,632.73 |
| (2) six purchases August 13, 1983 to August 18, 1983 (AF83–675) | 18,970.65 |
| (3) remainder of the $92,114.92 in purchases made from August 25, 1983, to September 13, 1983, less the $70,000 payment of August 19, 1983, *supra*. (AF83–746) | 22,114.92 |
| (4) remainder of the $29,856.96 purchases on September 21, 1986, less the $11,888.93 payment to which it has already been above attributed | 17,968.07 |
| (5) remainder of the $71,822.63 in purchases made after September 22, 1983, and the $67,107.67 payment to which it has already been above attributed | 4,714.96 |
| (6) Stipulation # 7: "[T]he USAF charged Global in the amount of $5,223.13 for excess 'fuel burn' by telex dated October 11, 1983. That charge remains unsatisifed to date." | 5,223.13 |
| Total | $77,624.46 |

The plaintiff cannot complain that, in order to obtain this subsequent value, the defendant relies on the debts owed to other government agencies in addition to the Air Force. The authorities have long held that the Government may set off against what one agency owes any amounts owed to another federal agency. See, e.g., *Cohen v. United States, United States v. Cohen*, 389 F.2d 689, 692 (5th Cir.1967) (setting off a liability owed to the Internal Revenue Service against a tort claim recovery from the Bureau of Prisons); *Sanders v. C.I.R.*, 225 F.2d 629, 637 (10th Cir.1955) (setting off a tax liability against a contract recovery from an agency other than the I.R.S. "It is clear that the United States has the same right as any creditor to apply unappropriated monies toward the payment of debts due it." ).

Accordingly, for the above reasons, it is hereby,

ORDERED, ADJUDGED AND DECREED that the plaintiff's complaint for recovery of alleged preferential transfers be, and it is hereby, denied.

## APPENDIX A

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINT FOR RECOVERY OF ALLEGED PREFERENCES

This is an action brought by the plaintiff debtor-in-possession to recover the value of certain allegedly preferential transfers, within the meaning of § 547 of the Bankruptcy Code, made by debtor to defendant within 90 days of the date of bankruptcy. The parties, at the time fixed for trial of the merits of this action, declined to present evidence and instead presented the action for decision on the basis of a stipulation of facts, *a copy of which is attached.* The court hereby incorporates that stipulation by reference in this memorandum as the findings of fact required by Rule 7052 of the Bankruptcy Rules. As they are material to the decision in the action at bar, those facts may be summarized by means of the following graph:

| Amount of check | Date of Delivery | Date of Honor | Date of "transaction" | Date of Invoice | Date of Bankruptcy |
|---|---|---|---|---|---|
| $70,000 | 8/1/83 | 8/2/83 | 5/20/83 | 6/27/83 | 10/19/83 |
| 5,000 | 8/1/83 | 8/2/83 | D 6/22/83 | 7/28/83 | 10/19/83 |
| 70,000 | 8/11/83 | 8/19/83 | 6/22/83 | 7/28/83 | 10/19/83 |
| 50,000 | 8/19/83 | 8/22/83 | D 7/15/83 | 8/26/83 | 10/19/83 |
| 11,888.93 | 9/16/83 | 9/19/83 | 6/22/83 | 7/28/83 | 10/19/83 |
| 67,107.67 | 9/21/83 | 9/22/83 | 7/15/83 | 8/26/83 | 10/19/83 |

These facts compel the following ultimate findings of fact: All of the subject payments represented by the several checks were made within 90 days of the date of bankruptcy. The parties otherwise stipulate that all the elements of a preference, as defined by section 547(b) of the Bankruptcy Code, exist with respect to each of the transfers effected by the checks. The only issues remaining for resolution by the court are whether and to what extent the defendant has viable defenses under sections 547(c)(2) and 547(c)(4) of the Bankruptcy Code.

The former exception applies to payments made on debts incurred in the ordinary course of business and made according to ordinary business terms "within 45 days after such debt was incurred." The only issue for resolution by the court is whether the payments were made within 45 days after each debt was incurred, if the stipulated "transaction" date is the date when the "duty to pay arises" within the meaning of the governing cases. (The fact that the stipulation is not clear in this regard, however, provides, as stated below, a separate and independent ground for denying the complaint.) Otherwise, given the governing principles, the court concludes that, with respect to those payments marked "D" in the "date of transaction" column above, the defendants' section 547(c)(2) defense should prevail. Thus, the plaintiff cannot recover the $52,514.33 represented by those payments.

Otherwise, with respect to the other payments sought to be recovered by the plaintiff, the stipulated facts purport to demonstrate that recovery is barred by section 547(c)(4)'s "subsequent value" rule. This court believes that these stipulated facts justify the analysis contained in the defendant's posttrial brief, the relevant portion of which is attached hereto and made a part hereof.

Accordingly, for the foregoing reasons, it is concluded that the debtor's complaint for recovery of preferences should be denied.

As mentioned above, a separate and independent ground for denial of all but one of the challenged transfers exists in the failure of the stipulation to specify when the obligation to pay arises. According to this court's prior decisions on the issue, it is the plaintiff's burden to demonstrate when the duty to pay arises. When a plaintiff in a preference action fails to demonstrate a prior arising of a duty to pay, a court may be justified in determining the date of the invoice to be the relevant date. Under such circumstances, all transfers would have been made within the 45–day limit imposed by section 547(c)(2), except the $11,888.93 check delivered on September 16, 1983. And, with respect to it, as noted above, the "subsequent value" rule wipes out any liability of defendant for it.

Therefore, for the foregoing separate and independent reasons, it is hereby

ORDERED, ADJUDGED AND DE-CREED that plaintiff's within complaint for relief be, and it is hereby, denied.

(s) Dennis J. Stewart  
Dennis J. Stewart  
Chief Bankruptcy Judge  

Kansas City, Missouri  
Date: -------------

## APPENDIX B

With regard to invoice POL 83–616, 14 purchases made from July 5, 1983 to July 15, 1983 totalling $66,217.89 were made within 45 days of the receipt and deposit by the USAF of check number 5597 in the amount of $50,000.00 on August 19, 1983 forwarded by Global to the USAF in payment of those purchases. See Stip. ¶ 4, ¶ 5, and Ex. C–3.

The other elements of the ordinary course of business preference exception of 11 U.S.C. § 547(c)(2) for both checks 4321 and 5597 were also present. See Stip. ¶ 11.

Thus $2,514.33 of the $70,000.00 received and deposited by the USAF on August 1, 1983 and the $50,000.00 received and deposited by the USAF on August 19, 1983 were transfers falling within 11 U.S.C. § 547(c)(2). This reduces the amount of the preferential transfers at issue from $273,996.60 to $221,482.27 ($273,996.60 — $52,514.33 = $221,482.27).

If the court determines from the facts that the unpaid purchases in invoices POL 83–675, POL 83–746 and POL 84–004 constitute new value falling within 11 U.S.C. § 547(c)(4), then the amount of preferential transfers at issue would be reduced from $221,482.27 to $63,958.62.

| | |
|---|---|
| Check 4321 $75,000.00 | $75,000.00 |
|    less $2,514.33 (ordinary course of business exception) | $72,485.67 |
|    8/2/83 to 8/11/83—Period One* | |
| 3 purchases on 8/8 and 9 AF 83–675** less $8,632.73 | $63,852.94 |
| Check 4322 $70,000.00 | $133,852.94 |
|    8/12/83 to 8/19/83—Period Two | |
| 6 purchases on 8/13 to 18 AF 83–675 less $18,882.29 | $114,970.65 |
| Check 5597 wiped out by ordinary course of business exception | |
|    8/20/83 to 9/16/83—Period Three | |
| 1 purchase on 8/24 AF 83–675 less $10,721.88 | $104,248.77 |
| 19 purchases on 8/25 to 9/13 AF 83–746 less $81,393.04 | $22,855.73 |
| Check 6008 $11,888.93 | $34,996.68 |
|    9/17/83 to 9/21/83—Period Four | |
| 1 purchase on 9/20 AF 83–746 less $1,747.98 | $32,996.68 |
| Check 4454 $67,107.67 | $100,104.35 |
|    9/22/83 to 10/19/83—Period Five | |
| 5 purchases on 10/14 to 18 AF 83–004 less $36,145.73 | $63,958.62 |

\* Period One is the period of time between Check 4321 and Check 4322, et cetera.

\*\* For the purchases on AF 83–675, see Stip. Ex. C–4; AF 83–746, see Stip. Ex. C–5; and AF 83–004, see Stip. Ex. C–6.

---

If the Court determines from the facts that the unpaid purchases in Navy invoices J0094, J0056, H0085–84, and H0077–84 constitute new value falling within 11 U.S.C. § 547(c)(4), then the amount of preferential transfers at issue would be reduced from $63,958.62 to zero.

| | |
|---|---|
| Period Four balance from accounting above | $32,996.68 |
| 2 purchases on 9/21/83 J0094* less $29,856.96 | $3,139.72 |
| Check 4454 $67,107.67 | $70,247.39 |
| Period Five AF purchases less $36,145.73 | $34,101.66 |
| 2 purchases on 9/28/83 J0094 less $35,676.90 | ZERO |
| | ($1,575.24) |

\* For the purchases on Navy J0094, see Stip. ¶ 8.

---

The USA submits that these various unpaid USAF and Navy fuel purchases by Global do indeed fall within the new value preference exception of 11 U.S.C. § 547(c)(4). Specifically, it is apparent that the five transfers in question (see Stip. ¶ 4), were made to the USA, a creditor. Then, after those transfers, jet fuel was supplied by the USA to the debtor. See the above accounting. And, this new value was not secured by an otherwise unavoidable security interest (547(c)(4)(A)), and Global did not make an otherwise unavoidable transfer to or for the benefit of the USA on account of the unpaid purchases and services in question (547(c)(4)(B)). See Stip. ¶ 11.

There is other new value available, to the extent it may become relevant. See Stip. ¶ 7 ($5,223.13 for excess fuel burn) ($114.65 for ground services), ¶ 8 ($17,671.64 for post-petition purchase of Navy owned aviation fuel and oil), and ¶ 10 (USCS inspection and security services as itemized in ex D).

The USA submits that it has the right to apply the new value provided by the Navy and the USCS. Global cites no authority for its arbitrary and overly restrictive limitation of the "creditor" in 11 U.S.C. § 547(c)(4) to that of the USAF. When Global made its five payments to the USAF, that entity receiving the payments was not only the USAF. It was also the Department of Defense. It was also the United States of America.