**In re RAY W. DICKEY & SONS, INC., Debtor.**

**R. Byrn BASS, Jr., Trustee, Plaintiff,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.**

Bankruptcy No. 580–00013.

Adv. No. 580–0054.

United States Bankruptcy Court, N. D. Texas, Lubbock Division.

Nov. 10, 1980.

R. Byrn Bass, Jr., Trustee.

Jack P. Driskill, Lubbock, Tex., for debtor.

Donna Lynn Snyder, San Antonio, Tex., for plaintiff.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

An involuntary petition was filed against Ray W. Dickey & Sons, Inc., debtor, on February 15, 1980. Thereafter on February 26, 1980, the debtor filed voluntary petition, seeking relief under Chapter 7 of Title 11 United States Code. The trustee filed this

action pursuant to 11 U.S.C. § 547, seeking to avoid a payment made by the debtor to Southwestern Bell Telephone Company.

The testimony at the trial reflected that the billing date, or cutoff date, for debtor's bill was the 13th of each month. The actual bill was rendered approximately ten days after that cutoff date and the due date was at least fifteen days after the issuance of the bill. For at least nine months prior to January 1980, the debtor did not pay the bill by the "due by" date. In fact service had been suspended by the phone company in July 1979 and it remained suspended until the debtor brought the account current. The telephone company requested, but never obtained from debtor, a deposit. From July 1979 through the November 1979 statement the debtor was always late with each payment, but did always finally pay it.

The statement for the billing date ending December 13, 1979, totalled $2,897.39, of which $1,423.34 were current charges and $1,474.05 was a carry over from the November statement. On a date in December, 1979, not fixed by the testimony, the carry over of $1,474.05 was paid, leaving outstanding the current charges for the billing through the December 1979 cutoff date of $1,423.34. That bill had issued on or about December 23, 1979, and its "due by" date was January 4, 1980.

The bill was not paid by its "due by" date of January 4, 1980. The statement for the period ending with the billing date of January 13, 1980, issued on or about January 23, 1980, in the total sum of $2,718.52, and included $1,295.18 in current charges, due by February 5, 1980, and the carry over of $1,423.34 from the December statement.

The Texas Public Utility Commission Substantive Rules require the telephone company to continue providing telephone service on credit for at least twenty days after a bill has issued. Appropriate notice was given to the debtor of the unpaid December bill and when it was not paid service was again interrupted by the telephone company on January 28, 1980. On January 31, 1980, the debtor paid to the telephone company the sum of $2,718.52, representing both the past due December bill and the current charges on the January bill which otherwise were not due until February 5, 1980. Service was restored.

The trustee has not attacked the portion of the payment which represented payment of the current bill nor has he attacked the payment of the past due bill from November which was paid sometime in December, 1979. Also he has not challenged that portion of the current bill which represents calls made more than 45 days prior to the date payment was made. He attacks only as preferential the payment of the $1,423.34 past due portion from the December 1979 bill.

The trustee established the elements of a preferential transfer within the meaning of 11 U.S.C. § 547(b). The telephone company asserts that the exception under § 547(c)(2) applies, because the challenged payment was one in payment of a debt incurred, and the payment was made, in the ordinary course of the business or financial affairs of the debtor and of the telephone company, the transaction was made according to ordinary business terms, and the debtor's payment to the telephone company was made not later than forty five days after the debt was incurred.

The critical issue is in determining when the challenged debt to the telephone company was "incurred." Congress made no attempt to define when a debt is incurred, excepting only the limited situation when the debt is a "tax." 11 U.S.C. § 547(a)(4). "Debt" is defined by § 101(11) as "liability on a claim", while "claim" is defined by § 101(4) as including "contingent, unmatured and disputed rights to payment." There is authority for the conclusion that the debt was incurred on the date when each of the long distance calls were made or the service was otherwise used by the debtor. Collier On Bankruptcy, 15th Edition, Paragraph 547.38:

> The issue of when a debt is "incurred" is not trivial. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. The better view is that the debt is incurred when the debtor obtains a property interest in the consideration exchanged giving rise to

the debt. Thus if goods are identified for shipment, unless the special agreement otherwise provides, the debtor has a special property interest and the debt is "incurred". *Certainly when a debtor uses a utility the debt is incurred when the resource is consumed rather than when the invoice is sent.* Thus in the above example, unless the utility bill is sent and paid within a short time, there is a significant probability that payment of the utility bill will be made after forty five days after the debt is incurred. (emphasis added).

In this case I conclude that the payment of $1,423.34 represents payment of a debt which was "incurred" prior to the cutoff date of December 13, 1979, a date more than 45 days prior to the date payment was made on January 31, 1980. That payment, to the extent of $1,423.34, is preferential and should be avoided.

LET JUDGMENT BE ENTERED ACCORDINGLY.

The clerk is directed to file this order and to furnish a copy of the order to each attorney of record.