TATE, Circuit Judge:
 

 A bankruptcy trustee sues to avoid a transfer made to a creditor by the debtor when insolvent within ninety days of the debtor’s filing of a voluntary petition in bankruptcy. Section 547(b) of the Bankruptcy Code of 1978, 11 U.S.C. § 547(b) (1978). The creditor defends, relying upon section 547(c)(2) of the Code, 11 U.S.C. § 547(c)(2) (1978); this section excepts from avoidability, inter alia, the debtor’s payment of an “ordinary course of business” debt made not later than 45 days after the debt was “incurred”. The creditor contends that the debt was “incurred” no earlier than the date of the invoice it sent to the debtor for contractual work after completion thereof. The bankruptcy court held that, instead, the debt was “incurred” for purposes of section 547(c)(2) no later than the date upon which the contractual work
 
 *835
 
 was completed, when the debtor then became obligated to pay for it. We affirm,
 

 We also affirm the bankruptcy court’s grant of summary judgment in favor of the trustee on the issue of insolvency, holding that the opposing party’s speculative testimony (that the debtor
 
 may
 
 have been solvent) of the nature shown did not sufficiently rebut or meet the statutory presumption of the debtor’s insolvency, section 547(f) of the Code, 11 U.S.C. § 547(f), so as to require the trustee to produce further evidence to prove the debtor’s insolvency at the time the transfer was made.
 

 The creditor Wilson appeals to this court from the bankruptcy court’s judgment in favor of Emerald’s trustee for $244,497, the amount of the payment (transfer) thus avoided, as having been made more than 45 days after the debt was incurred and while the debtor Emerald was insolvent.
 
 [1]
 
 It contends: (I) that the bankruptcy court erred in finding that the debt was incurred earlier than the date upon which the invoice was sent, and (II) that the bankruptcy trustee did not prove that the debtor was insolvent at the time of the present transfer, one of the requisite conditions for setting aside a transfer as preferential, section 547(b)(3) (quoted in note 2 infra).
 

 I.
 
 Date that the debt was “incurred”.
 

 Section 547(b) provides that the bankruptcy trustee may avoid and reclaim for the estate any preferential transfer made by the debtor, while insolvent, within 90 days of the debtor’s filing of a petition in bankruptcy.
 
 [2]
 
 However, section 547(c)(2) provides that such a transfer may
 
 not
 
 be avoided insofar as it was the payment of a debt that was incurred in the ordinary course of business and that was made not later than 45 days after the debt was “incurred.”
 
 [3]
 
 The creditor Wilson primarily relies upon this latter provision as excepting from avoidability Emerald’s payment of March 3.
 

 The relevant dates are:
 

 January 3, 1980 — Wilson’s contractual oil well-drilling work for the debtor Emerald completed;
 

 January 17, 1980 — Wilson invoiced Emerald for the work;
 

 February 15, 1980 — 90th day before Emerald filed its petition in bankruptcy— preferential transfers
 
 after
 
 this may be avoided under 547(b);
 

 
 *836
 
 March 3, 1980 — Emerald paid Wilson for the work;
 
 [4]
 

 May 16, 1980 — Emerald filed its petition in bankruptcy.
 

 Thus, Emerald’s payment of March 3rd to Wilson may be reclaimed by the trustee if the debt was incurred on January 3rd (sixty days earlier), the date the work was completed; but it may
 
 not
 
 be reclaimed if the debt was incurred on January 17th (45 days earlier), the date that Wilson invoiced Emerald for the contract work.
 

 The term “incurred” is not defined in the Bankruptcy Code of 1978. The exception to the trustee’s powers to avoid preferential transfers created by section 547(c)(2)— which applies to payments made “in the ordinary course of business” of debts “incurred in the ordinary course of business”,
 
 if
 
 the payment was made “not later than 45 days after the debt was
 
 incurred
 
 ” — had no counterpart in the prior bankruptcy statute. The “ordinary course of business” exception was designed to replace the former judicially-created “current expense” doctrine, whereby current expenses were not regarded as antecedent debts, so that payment thereof was not preferential.
 
 Barash v. Public Finance Gorp.,
 
 658 F.2d 504, 510-11 (7th Cir.1981); Kaye, Preferences Under the New Bankruptcy Code, 54 Am.Bankr. L.J. 197, 201-02 (1980). Payment within forty-five days was regarded as the normal trade credit cycle for goods or services furnished during a month, billed at the end thereof, with payment to be received within no more than fifteen days from billing.
 
 Barash, supra,
 
 658 F.2d at 511; Levin, An Introduction to the Trustee’s Avoiding Powers, 53 Am.Bankr.L.J. 173, 186-87 (1979).
 

 The commentators early noted that troublesome issues may arise in the judicial interpretation of the date that a debt is “incurred”.
 
 See, e.g.,
 
 4 Collier on Bank
 
 *837
 
 ruptcy ¶ 547.38, at 547-121 (15th ed. 1982); Kaye,
 
 supra,
 
 54 Am.Bankr.L.J. at 203-05. While conceding that the date of invoicing is not necessarily excluded as a statutory test, and while suggesting that inequitable results may follow if the term “incurred” is interpreted literally, they concluded that the more logical view, and one more in view with congressional intent insofar as expressed, is that the debt is incurred on the date that the debtor becomes liable for it— when a resource is consumed or a service performed — , not the date that the creditor chooses to bill the debtor.
 
 Id.
 
 Further, the interpretation that a debt is “incurred” on the date that the debtor becomes liable to pay it is in accord with the Bankruptcy Code’s definitions of “debt” (“liability on a claim”), section 101(11), and of “claim” (as including “contingent, unmatured and disputed rights to payment”), section 101(4).
 

 The subsequent decisional interpretations are in accord with the view that a debt is “incurred” for purposes of section 547(c)(2) (i.e., the “ordinary course of business” exception), on the date that the debtor becomes obligated to pay for the services or goods.
 
 Barash v. Public Finance Corp., supra,
 
 658 F.2d at 511;
 
 In re Valles Mechanical Industries, Inc.,
 
 20 B.R. 350, 352-53 (Bkrtcy.N.D.Ga.1982);
 
 In re Keeling,
 
 11 B.R. 361, 362 (Bkrtcy.D.C.Minn.1981);
 
 In re Ray W. Dickey & Sons, Inc.,
 
 11 B.R. 146, 147 (Bkrtcy.N.D.Tex.1980);
 
 In re McCormick,
 
 5 B.R. 726, 731 (Bkrtcy.N.D.Ohio 1980). Under this rationale,
 
 Valles Mechanical
 
 and
 
 Dickey, supra,
 
 expressly rejected the present creditor’s contentions that the date of invoicing, rather than the date of the obligation, should be regarded as the date the debt was “incurred”.
 

 In our view, for purposes of the “ordinary course of business” exception to avoidability created by section 547(c)(2), a debt is incurred when the debtor becomes obligated to pay it, not when the creditor chooses to invoice the debtor for his work or goods. This view is in accord with the most logical meaning of the statutory language in the light of statutory definitions in the Code as a whole, as well as with the appar-ent general Congressional intent in creating the exception. Although literal application of the statutory language may have consequences possibly unforeseen by Congress in some circumstances, the present circumstance is not one of them. The date of invoicing rather than the date of debt-obligation would leave to the creditor the discretion to determine the date the obligation was incurred, creating the possibility not only of inequality of treatment of similarly-situated creditors (depending on the vagaries of their billing practices), but also the opportunity for a particular creditor, who foresees that his debtor is approaching bankruptcy, to secure preferential treatment for himself by the timing of his bill. Our view, moreover, is in accord with the prior decisions of the relatively few courts that have considered the issue.
 

 II.
 
 Proof of Insolvency of Debtor
 

 The creditor Wilson also contends that the plaintiff trustee did not carry its burden of proving that the debtor Emerald was insolvent at the time the March 3 payment was made. Under section 547(b)(3) (quoted in note 2
 
 supra),
 
 a trustee may avoid a transfer as preferential only if “made while the debtor was insolvent.”
 

 When Emerald filed its petition in bankruptcy on May 16, 1980, it listed assets of $178,800 and liabilities of over four million dollars. The creditor Wilson points out that this circumstance, after it had become evident that several drilling contracts would end in disastrous losses, does not necessarily indicate that Emerald was insolvent at the time the present payment of March 3, 1980 was made.
 

 Section 547(f) of the Bankruptcy Code provides that, for purposes of avoiding a preferential transfer, “the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition [in bankruptcy].” However, as expressly indicated in the legislative reports and in legislative amendments clarifying the application of the Federal Rules of Evidence to bankrupt
 
 *838
 
 cy proceedings,
 
 [5]
 
 the intent of the presumption was to be governed by Fed.R.Evid. 301; thus, to require the party against whom directed (here, the creditor Wilson) to come “forward with evidence to rebut or meet the presumption”, but not to shift the burden of proof or nonpersuasion to him, which burden remains against the party (here, the trustee) who had the original burden to prove insolvency in order to avoid a transfer as preferential.
 
 [6]
 

 In the present instance, at the hearing before the bankruptcy court on the issue of insolvency, the trustee rested on the presumption. The creditor Wilson then presented as its witness a certified public accountant who had not inspected Emerald’s accounts or records or the working papers of the trustee’s accountant who had conducted an extensive audit of the failing business. (This latter circumstance was brought out by the examination and cross-examination of Wilson’s expert. When Wilson rested upon the testimony of its accountant witness, the trustee relied upon the statutory presumption of insolvency and did not tender the testimony of his accountant.)
 

 The effect of the testimony of Wilson’s accountant was to criticize the trustee’s accountant as possibly having improperly employed the “percentage of completion” of ongoing contracts method of accounting.
 
 [7]
 
 He opined that therefore certain of Emerald’s assets (ongoing drilling contracts) may have been undervalued. As we read his testimony, he did not at any time attempt to testify that in fact Emerald’s assets exceeded its liabilities on the date of Wilson’s payment; only that the analysis of the other accountant
 
 may
 
 have improperly so concluded.
 

 Under the Bankruptcy Code definitions, an individual or corporate debtor is “insolvent” when “the sum of such entity’s debt is greater than all of such entity’s property, at a fair valuation.” Section 101(26) of the Code, 11 U.S.C. § 101(26). We agree with the bankruptcy court that the present evidence offered by the creditor, which at most indicated a
 
 potential
 
 error in accounting methods relied upon by the trustee, did not constitute any evidence sufficient to cast into doubt the statutory presumption of insolvency, i.e., that the debtor’s assets exceeded its liabilities.
 

 In the absence of “evidence to meet or rebut the presumption”, Fed.R.Evid. 301, the trustee was entitled to rely upon the presumption of insolvency in his favor. Wilson’s accountant testified that the trustee’s accounting methods
 
 may
 
 have undervalued assets, without pointing out which assets and without affording a reasonable basis to conclude that in fact the debtor’s
 
 *839
 
 assets may have been greater than his liabilities at the time of the transfer. This testimony therefore does not constitute evidence that meets or rebuts the presumption, so as to require the trustee under Fed.R. Evid. 301 to offer further evidence of the debtor’s insolvency in order to meet his burden of proof as to it. To hold that any sort of speculative showing by the party opposed to the presumption would cause it to disappear, no matter how tenuous the claim of possible solvency, would in our view resurrect the mischief (see note 5
 
 supra
 
 ) that was intended to be cured by the 1978 Code’s creation through section 547(f) of the statutory presumption of insolvency.
 

 The bankruptcy court did not err, therefore, in granting summary judgment after the creditor Wilson rested on its accountant’s testimony, in the face of the court’s indication that this evidence by itself was insufficient to meet or rebut the statutory presumption.
 

 Conclusion
 

 For the reasons noted, we AFFIRM the judgment of the bankruptcy court avoiding the debtor’s payment to the creditor as a preferential transfer and, consequently, awarding judgment in favor of the trustee and against the creditor in such amount.
 

 AFFIRMED.
 

 [1]
 

 . This court has jurisdiction under 28 U.S.C. § 1293(b), which permits the parties by mutual agreement to appeal directly to the Court of Appeals “a final judgment, order, or decree of a bankruptcy court of the United States.”
 
 See also Matter of Kutner,
 
 656 F.2d 1107, 1111-12 (5th Cir.1981) (section 1293(b) applies to bankruptcy court appeals in the transition period before full implementation of all provisions of the new Bankruptcy Code).
 

 [2]
 

 . Section 547(b) provides, in pertinent part: [T]he trustee may avoid any transfer of property of the debtor—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4) made—
 

 (A)on or within 90 days before the date of the filing of the petition; [and]
 

 (5) that enables such creditor to receive more than such creditor would receive if—
 

 (A) the case were a case under chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C)such creditor received payment of such debt to the extent provided by the provisions of the title.
 

 11 U.S.C. § 547(b). In this case, the parties stipulated to the facts (except that of insolvency,
 
 see
 
 II
 
 infra)
 
 establishing each of the elements of the claim, which all must be proved by the trustee before recovery of the transfer.
 
 See
 
 4 Collier on Bankruptcy ¶ 547.01, at 547-11 (15th ed. 1982).
 

 [3]
 

 .Section 547(c)(2), 11 U.S.C. § 547(c)(2) (1978), provides, in pertinent part:
 

 The trustee may not avoid under this section a transfer—
 

 ♦ ♦ i(« sfc ‡
 

 (2) to the extent that such transfer was—
 

 (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
 

 (B) made not later than 45 days after such debt was incurred;
 

 (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
 

 (D) made according to ordinary business terms.
 

 [4]
 

 . Since we find the debt was incurred on January 3, 1980, it is unnecessary to decide whether Wilson’s payment was made on March 3rd, the date Wilson deposited Emerald’s check in its account and received credit therefor (as held by the bankruptcy court), or instead on March 5th (as contended by the trustee), the date that Emerald’s check was accepted by its bank and that Emerald’s account was actually debited, or instead on February 28th (as contended by Wilson), the date that Wilson received Emerald’s check through the mails. Under all three dates, the payment was not made until later than 45 days after the debt was incurred on January 3rd.
 

 We do note, however, that the bankruptcy court’s determination of payment as made when the creditor deposits the check and receives credit therefor was reversed by the district court in a related case involving another of Emerald’s creditors. The district court held that a check is merely a promise to pay and does not vest the creditor with title to the funds until the debtor’s bank accepts the check and thus debits the debtor’s account, so that the date the debtor’s check is presented to the bank is the date of payment.
 
 See, e.g., In re Sportsco, Inc.,
 
 12 B.R. 34, 35-36 (Bkrtcy.D.Ariz.1981); Matter of Duffy, 3 B.R. 263, 264 (Bkrtcy.S.D.N.Y.1980).
 
 See also
 
 section 547(e)(1)(B), 11 U.S.C. § 547(e)(1)(B): “[A] transfer ... is perfected when a[nother] creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee [creditor]”, such as by the other creditor’s garnishment of the debtor’s bank account prior to the acceptance by the debtor’s
 

 bank of the debtor’s check to the instant creditor.
 
 In re Sportsco, Inc., supra,
 
 12 B.R. at 35.
 

 In urging February 28th, date of receipt by Wilson of Emerald’s check, Wilson relied upon section 547(e)(2)(A)’s provision that, “except as provided by paragraph 3 of this section [§ 547(e)(3), quoted below]”, the transfer is made “at the time such transfer takes effect between the transferor and transferee [i.e., February 28th], if such transfer is perfected at, or within 10 days, after such time”. (The date of perfection here is urged as being no later than March 5th, when Emerald’s check was presented to and accepted by Emerald’s bank, i.e., as within ten days after the transfer was allegedly effective between, the parties.) No bankruptcy decisions are cited in support of this contention. Wilson’s contention also overlooks section 547(e)(3), which in defining a transfer provides that in any event “a transfer is not made until the debtor has acquired rights in the property transferred.”
 
 But see
 
 legislative history reprinted in Collier on Bankruptcy, Appendix 3, at parts IX and X,
 
 quoting
 
 House & Senate Debates on Compromise Bill (H.R. 8200), 124 Cong.Rec. HI 1,097 (Sept. 28, 1978) (report of Cong. Edwards); S17.414 (Oct. 6, 1978) (report of Sen. DeConcini) (for purposes of section 547(c)(1) and (2), “payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered.”
 
 (also reprinted in
 
 Herzog & King, Bankruptcy Code, Part III, at 287 (Collier Pamphlet ed. 1979)).
 

 [5]
 

 .See H.R. No. 95-595, 95th Cong., 1st Sess. 375 (1977)
 
 reprinted in
 
 Collier on Bankruptcy, Appendix 2, at 375 (15th ed. 1982); Sen.Rep. No. 95-989, 95th Cong., 2d Sess. (1978), U.S. Code Cong. & Admin.News 1978, p. 5787,
 
 reprinted in
 
 Collier on Bankruptcy, Appendix 3, at 89 (1982). Sections 251 and 252 of the 1978 bankruptcy legislation, Pub.L. No. 95-598, amended Fed.R.Evid. Rules 1101(a) and (b) so as to specify that they applied to bankruptcy proceedings, while section 405 of that legisla- ( tion had the effect of specifying that these rules of evidence were to apply to bankruptcy proceedings whether under the former statute or under the new 1978 code.
 

 The 1978 creation of the presumption of insolvency was a change in the prior law designed to simplify the trustee’s former burden of reconstructing the debtor’s books and records, even though it was unusual that a debtor was not insolvent for the 90 days before the bankruptcy petition was filed. 4 Collier on Bankruptcy ¶ 547.03[5], at 547-24 (15th ed. 1982);
 
 in re Butler,
 
 3 B.R. 182, 185 (Bkrtcy.E.D. Tenn.1980).
 

 [6]
 

 . Fed.R.Evid. 301 provides that:
 

 a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.
 

 [7]
 

 . This method recognizes the potential profit as each portion of the contract is completed, but it does not recognize the amount of a loss until it becomes apparent that the drilling contract will result in a loss and not profit. The substance of the criticism is that the trustee’s accountant may have reflected prematurely the existence of losses on ongoing drilling contracts of Emerald because the audit was completed after the wells had in fact failed.