In re KEYDATA CORPORATION, Debtor.

KEYDATA CORPORATION, Plaintiff,

v.

BOSTON EDISON COMPANY, Defendant.

Bankruptcy No. 80–1923–JG. Adv. No. A82–547.

United States Bankruptcy Court, D. Massachusetts.

Dec. 5, 1983.

Bertin C. Emmons, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for debtor/plaintiff.

George F. Parker, III, Badger, Sullivan, Kelley & Cole, P.C., Boston, Mass., for defendant.

## MEMORANDUM ON PREFERENTIAL TRANSFERS

JAMES N. GABRIEL, Bankruptcy Judge.

The Complaint of the Plaintiff debtor, Keydata Corporation ("Keydata" or "the debtor") seeks to recover four payments to Boston Edison Company ("Edison") totalling $12,183.52 alleging that they were preferential transfers. 11 U.S.C. Section 547 permits the Trustee[1] to avoid and reclaim for the estate any transfer by the debtor while insolvent to a creditor on account of an antecedent debt made within ninety days before the filing of the bankruptcy petition. After trial the Plaintiff debtor reduced its demand to $6728.11 The Defendant Edison admitted receiving the four payments, but asserted that they were not preferences because the payments were contemporaneous exchanges for new value and were made in the ordinary course of business within forty-five days after the debts were incurred. It further contends that if there were preferences Edison gave subsequent new value, which should be set off against the preferences. Edison also contended that Keydata did not demonstrate that it was insolvent when it made the payments.

In accordance with Bankruptcy Rule 7052, the Court makes the following findings of facts. Keydata filed its Chapter 11 petition on October 31, 1980. Within ninety days prior to this Keydata made four payments to Edison for electricity usage at its two places of business. A check dated August 13, 1983 for $959.06 for electricity used from May 22, 1980 to June 24, 1980 was received by Edison on August 15, 1980. For this invoice dated July 2, 1980 the meter was read on June 24, 1980 and payment was due on July 24, 1980. Keydata sent a $4885.81 check dated September 5, 1980 in payment for electricity used from June 16, 1980 to July 16, 1980 and for interest. The meter was read on July 16, 1980. This invoice was dated July 24, 1980 and pay-ment was due August 11, 1980. Edison received the check on September 9, 1980. Keydata sent a payment of $961.80 on October 22, 1980 for electricity used from July 24, 1980 to August 25, 1980. The invoice, dated September 3, 1980, showed that the meter had been read on August 25, 1980. Edison received the check on October 24, 1980. Keydata sent a check in the amount of $5406.89 dated October 10, 1980 for electricity used from July 16, 1980 to August 16, 1980 plus interest of $72.83. The invoice, dated August 25, 1980, showed that the meter was read on August 25, 1980 and that payment was due on September 9, 1980. Edison received the check on October 24, 1980. No further payments were made and as of the date of the filing Edison was owed $5455.45 for electricity consumed during October and November 1980.

## CONCLUSIONS OF LAW:

The parties stipulated that the debtor, Keydata, made transfers of property to a creditor, Edison, within ninety days before the filing which would enable Edison to receive more than it would receive in a distribution under a Chapter 7 case. The remaining issues are whether the creditor introduced sufficient evidence to rebut the presumption that the debtor was insolvent within the preference period, whether the payments fall within any exception to the preference rule, and whether the creditor is entitled to any offsets.

## INSOLVENCY:

Edison maintains that the Trustee did not establish the debtor's insolvency within the ninety days preceding the filing. 11 U.S.C. Section 547(f) creates a presumption that the debtor was insolvent during this period. The purpose of the presumption is to simplify a trustee's burden of proving insolvency by dispensing with the necessity of reconstructing debtor's financial condition. *L. King, 4 Collier on Bankruptcy,* Par. 547(5) at 547–24 (15th ed.

---

1. The Chapter 11 debtor succeeds to the avoiding powers of a Trustee. 11 U.S.C. Section 1107(b).

1982). The legislative history reveals that the presumption is governed by the Federal Rules of Evidence, Rule 301, requiring the party against whom the presumption applies to come forward with evidence to meet or rebut it. *In Re Emerald Oil Co.,* 695 F.2d 833 (5th Cir.1983). Insolvency, as defined in 11 U.S.C. Section 101(26), means the sum of one's debts exceeds his property. This traditional balance sheet test of insolvency examines the value of assets compared with liabilities, and does not consider whether one is able to pay debts as they accrue. *See In Re Arrowhead Gardens, Inc.,* 32 B.R. 296, 299 (Bkrtcy.D.Mass.1983).

In this case, the debtor rested on this presumption. The sole evidence Edison points to in rebuttal is testimony that Keydata was current in its bills, which is not evidence of insolvency. There was no evidence on the value of Keydata's assets or amount of its liabilities during the relevant period, and there was no evidence that its liabilities exceeded its assets. In the absence of evidence to meet or rebut the presumption, the debtor was entitled to rely on the presumption of insolvency.

## CONTEMPORANEOUS EXCHANGES:

Edison argues that the four payments were not in payment of antecedent debt but were made to assure continuance of electricity. An exception to the voidability of preferences is contained in 11 U.S.C. Section 547(c)(1) which legitimizes any transfer made as a "contemporaneous exchange for new value given to the debtor." "New value" means "money or money's worth in goods, services or new credit . . . but does not include an obligation." 11 U.S.C. Section 547(a)(2). Replenishment of a line of credit on an open account in response to a receipt of payment is not a contemporaneous exchange for new value because the payment was intended to satisfy a previous debt and substitution of credit in response to a payment is an existing obligation. *In Re Rustia,* 20 B.R. 131, 9 B.C.D. 6 (1982).

In the present case, Edison's invoice plainly shows that the bill was for electrici-

ty already used prior to the billing date. Moreover, the debtor intended and Edison applied the payment against the bill for electricity consumed prior to the meter reading date. Clearly, the payments were not for current services and the contemporaneous exchange defense must fail.

## PAYMENTS IN THE ORDINARY COURSE OF BUSINESS:

Section 547(c)(2) excepts from the voidability of preferences the payment of a debt incurred in the ordinary course of business of the debtor and the transferee not later than forty-five days after the debt was incurred. The troublesome question of "when is a debt incurred?" has been the subject of much commentary and several judicial interpretations. The Courts and commentators have focused on three dates in the context of service obligations:

1.) the date the bill was presented (date of invoice), *W. Norton, Bankruptcy Law And Practice,* Section 32, 17 at 50 (1982);

2.) the date the service was provided, *In Re Emerald Oil Co.,* 695 F.2d 833 (5th Cir. 1983); *In Re Ray W. Dickey & Sons, Inc.,* 11 B.R. 146 (Bkrtcy.N.D.Tex.1980); *L. King, 4 Collier On Bankruptcy,* Par. 547.38 at 547–120 (15th ed. 1982); and,

3.) the bill's cutoff date (the date the meter was read), *In Re Thomas W. Garland, Inc.,* 19 B.R. 920 (Bkrtcy.E.D.Mo.1982).

The majority of decisions interpreting the issue vis-a-vis running accounts has rejected the view that the date of the bill is the date the debt was incurred. *E.g., In Re Emerald Oil Co.,* supra, 695 F.2d 833 (5th Cir.1983); *In Re Valles Mechanical Industries, Inc.,* 20 B.R. 350, 9 B.C.D. 334 (Bkrtcy.N.D.Ga.1982). This date is inappropriate for several reasons. The failure to send a bill does not necessarily mean that the obligation has not been created but merely that payment is not yet due. *In Re Valles Mechanical Industries, Inc.,* supra, 20 B.R. 350, 9 B.C.D. at 334. Moreover, use of this date would give a creditor who foresees a debtor's financial difficulties the opportunity to secure un-

avoidable preferential treatment by the timing of his bill. *In Re Emerald Oil Co.,* supra, 695 F.2d at 833.

The prevailing view is that a debt is incurred when the debtor uses the services. *E.g., In Re Emerald Oil Co.,* supra, 695 F.2d 833 (5th Cir.1983); *Barash v. Public Finance Corp.,* 658 F.2d 504 (7th Cir.1981); *In Re Dickey & Sons, Inc.,* 11 B.R. 146, 7 B.C.D. 901 (Bkrtcy.N.D.Tex.1980). The rationale for this view in the utility debt context is that the debtor becomes obligated to pay upon consumption, and the utility's right to payment arises upon the debtor's use of the electricity, despite the fact that a bill has not yet been issued or the meter read. However, this approach has been correctly rejected as unworkable in determining the applicability of the forty-five day rule. As stated in *In Re Thomas W. Garland, Inc.,* 19 B.R. 920 (Bkrtcy.E.D. Mo.1982):

"... this position presents practical problems when applied to a utility supplying electricity and steam. The task of identifying or measuring when each kilowatt of electricity or pound of steam is consumed is a practical impossibility as this utility consumption continues twenty-four hours per day." *Id.* at 927.

The *Garland* court adopted the view that in the context of utility accounts the debt is incurred on the date the utility meter is read. In my view, this approach seems to be the most practical in this select situation because daily electricity usage cannot be determined with any exactitude given fluctuation in consumption. It seems to be the most fair and objective approach as well because it is consistent with the course of dealings between the parties, which is to determine consumption at periodic intervals, and will prevent either party from securing the opportunity to affect a preference.

Next, it must be determined when Keydata made the payments. For the purposes of the preference section, payment by check is equivalent to a cash payment, unless the check is dishonored, and payment is considered made when the check is delivered. *House and Senate Debates,* 124 Cong. Record H. 11,097 (September 28, 1978). Accordingly, Keydata made payment when Edison received the checks.

Applying these principles to this case, and using the meter reading date as the determinative point in time, it is clear that none of the payments are excepted from status as preferences pursuant to the forty-five day rule. The $959.06 payment was made on August 15, 1980 whereas the debt was incurred on June 24, 1980, fifty-two days before payment. The $4855.81 payment was made on September 9, 1980 and the debt was incurred on September 9, 1980, fifty-five days prior on July 16, 1980. The $5406.89 obligation was incurred on August 15, 1980 and payment was made on October 17, 1980, sixty-three days later. The debtor incurred the obligation of $961.80 on August 25, 1980 and paid Edison fifty-nine days later on October 24, 1980. None of the payments were made in the ordinary course of business within forty-five days after the debt was incurred and this defense must fail.

### SUBSEQUENT ADVANCES:

Edison contends that it is entitled to set off approximately $11,000 in new value it extended to the debtor and urges that the Court apply the "net result" rule. Section 547(c)(4) is not a reiteration of the "net result rule" employed under the prior Act which has been entirely supplanted by the formula under this section, which is more accurately referred to as "the subsequent advance rule". *In Re Gold Coast Seed Co.,* 30 B.R. 551, 10 B.C.D. 1049 (B.A.P. 9th Cir.1983). For Section 547(c)(4) to apply, three requirements must be met: the creditor must have extended the new value after receiving the preference; the new value must have been unsecured; and, the new value must remain unpaid. *Matter of Bishop,* 17 B.R. 180 (Bkrtcy.N.D.Ga.1982). Under this formula, the value of the utility service provided to the debtor after the preference payment for earlier service may be offset against the preference payment,

as long as the new value remains unpaid. *In Re Thomas W. Garland, Inc.,* 19 B.R. 920, 929 (Bkrtcy.E.D.Mo.1982); *In Re Saco Local Dev. Corp.,* 30 B.R. 859, 10 B.C.D. 962 (Bkrtcy.D.Me.1983).

In the present case, a review of defendant's Exhibits 2 and 3 shows that the amount of unsecured value of electricity extended to Keydata by Edison after the preference payments was $4876.48 and $578.97 for a total of $5455.50. This entire amount went unpaid. Having satisfied the elements of Section 547(c)(4), this amount may be offset against the total amount of preferences, $12,183.56, and judgment shall enter for the Plaintiff in the amount of $6728.11.