PER CURIAM.
Liberty National Life Insurance Company (Liberty) appeals from the order of United States District Judge James P. Churchill of the Eastern District of Michigan reversing the order of the bankruptcy judge which held that Liberty was not the recipient of a preferential transfer.
Liberty provided Advance Glove Manufacturing Company (Advance Glove), the debtor in the Chapter 7 bankruptcy pro *250 ceeding, with a group term life insurance policy and a group accident and health insurance policy. Each month on or before the beginning of the month, Liberty would send Advance Glove a premium report for the premium due that month. On or about November 1, 1980, Liberty sent Advance Glove a premium report showing the premium due as of November 1, 1980 in the amount of $8,186.54. Advance Glove issued a check in this amount to Liberty. The cheek was paid by the drawee bank on January 7, 1981. The check for the December premium payment in the amount of $8,000.27 was paid by the drawee bank on February 2, 1981. On March 19, 1981, Advance Glove filed its bankruptcy petition.
G.E. Grogan, Trustee (Trustee) of Advance Glove, commenced an adversary proceeding to recover as preferential transfers the insurance premiums paid by Advance Glove to Liberty on January 7, 1981 and February 2, 1981. Liberty did not contest the Trustee’s allegation that the prerequisites for the finding of a preferential transfer, as set forth in 11 U.S.C. § 547(b), were met. Liberty, however, contended that the payments were not preferential pursuant to 11 U.S.C. § 547(c)(2) since the payments were made within 45 days of the date the debt was incurred. The bankruptcy court agreed and held that there was no preferential payment. The bankruptcy court found that the debt for the premiums was incurred by Advance Glove on the last day of each month. The payments were made within 45 days of this date when the drawee bank honored Advance Glove’s checks.[1]
The Trustee appealed the decision of the bankruptcy court to the district court. The district court found that the debt for the premiums was incurred as of the first day of each month — the day payment was due. The district court thus held that the payments were preferential and reversed the order of the bankruptcy court and remanded for a judgment to be entered for the Trustee.
Liberty appeals from the order of the district court contending that the payments from Advance Glove were made within 45 days of the day that the debt for the insurance premiums was incurred. The sole issue on this appeal is when, within the meaning of 11 U.S.C. § 547(c)(2), did Advance Glove incur the debt for the insurance premiums. The Trustee contends that the debt was incurred on the first day of each month when the premium payments first came due. Liberty contends that the debt was incurred 31 days later after the statutory grace period of the Michigan Insurance Act, M.C.L.A. § 500.3410, runs. Alternatively, Liberty suggests that the debt is incurred at the end of the month since it is only then possible to calculate the exact amount of insurance coverage provided for the month.
We hold that the debt for the insurance premiums was incurred on the first day of each month — the day payment was due under the express language of the insurance policy. We therefore affirm the decision of the district court.
The Bankruptcy Code at 11 U.S.C. § 547(b) authorizes the trustee to set aside and avoid certain transfers of property made by the bankrupt prior to bankruptcy. The parties agree that the five statutory requirements for an avoidable transfer under § 547(b) are met here.[2]
*251 The Bankruptcy Code at 11 U.S.C. § 547(c), however, lists exceptions to the trustee’s avoidance power since not all transfers by the debtor within 90 days of his bankruptcy petition are deemed harmful to his estate. The ordinary course of business exception provides:
(c) The trustee may not avoid under this section a transfer—
(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms;
11 U.S.C. § 547(c)(2).
The primary purpose of the ordinary course of business exception “is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor’s slide into bankruptcy.” H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 373 (1977), reprinted in 5 U.S.Code Cong. & Admin.News pp. 5787, 6329 (1978). The section thus looks to the ordinary course of business between the parties.
The insurance policy between the parties expressly provides that “premiums are payable monthly by the policyholder in advance.” We agree with the district court that under the policy the premiums for insurance coverage for the months of November and December, 1980 were incurred for purposes of 11 U.S.C. § 547(c)(2) on November 1, and December 1, 1980.
Liberty contends that the statutory grace period of the Michigan Insurance Act, M.C.L.A. § 500.3410, alters the date the debt was incurred. We disagree. The 31-day grace period was not intended by the parties or Michigan law to defer the due date of the premium, but was designed for the unrelated purpose of protecting the policyholder from premature termination of coverage upon default. As stated in Couch on Insurance:
The grace clause does not change the date when the premium is due but provides a period in which default in payment may be retrieved and corrected without complete loss of policy, and if death occurs during the grace period, the policy must be paid, but not because the defaulted premium was not due until the end of the grace period. Default occurs when a premium is not paid on the due date and the default is not postponed for the grace period, the latter merely constituting a waiver of the default.
Couch on Insurance 2d § 32:133 (2d ed. 1961) (footnotes omitted). Hence, the debt for insurance premiums was incurred the day the premium was due under the insurance policy. Accord, In re Ray W. Dickey & Sons, Inc., 11 B.R. 146 (Bkrtcy.N.D.Tex. 1980) (debt for telephone service incurred on date of use notwithstanding 20-day grace period before service could be terminated).
Liberty also contends that the debt is not included until after the insurance is provided, and, in this case, not until the end of the month when the exact amount of the insurance coverage provided for the month can be determined. Liberty relies on a line of cases which state that, as a general rule, *252 the date of invoicing should not be regarded in determining when a debt is incurred for purposes of section 547(c)(2). In In re Emerald Oil Co., 695 F.2d 833 (5th Cir. 1983), the creditor contended that the debt was incurred no earlier than the date of the invoice that it sent to the debtor for completed contractual work. The court held that a debt is incurred for purposes of section 547(c)(2) on the date that the debtor becomes “obligated to pay for the services or goods.” 695 F.2d at 837. The court then found that the date the debtor became liable for the services was the date the resource is consumed or service is performed, not the date the creditor chooses to bill the debtor.
The court in Emerald feared that the date of invoicing would leave to the creditor the discretion to determine the date the obligation was incurred, and thus would allow some creditors the chance to secure preferential treatment for themselves. Such concerns, even if otherwise valid, need not detain us here, for the express written language of the policy requires that the debtor — Advance Glove — pay its insurance premiums on the first of each month, in advance. Since the policy fixes the due date on the first of the month, the concern expressed in Emerald that the date might be manipulated simply does not exist here. If the grace period, as we hold, does not affect the due date, we find nothing in state or federal law to forbid the parties from contracting for payment of the premium in advance. The trial court’s ruling, and ours, merely holds the parties to their ordinary business practice.
Accordingly, since the payments were not made within 45 days of the date that the debts for the insurance premiums were incurred, the payments do not come within the exception of section 547(c)(2). They therefore are preferential transfers within the meaning of section 547(b) and the district court correctly concluded that the monies so paid were recoverable by the trustee.
AFFIRMED.

. The parties have agreed that the transfer occurred when the drawee bank paid on the two checks. There is, however, authority that the transfer occurs when the checks are delivered. See O’Neill v. Nestle Libbys P.R., Inc., 729 F.2d 35 (1st Cir.1984). We need not and do not reach this issue.

. Section 547(b) provides:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
*251 (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debt- or was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).