In re OLD WORLD CONE
COMPANY, Debtor.

Stephen RASLAVICH, Chapter 7
Trustee, Plaintiff,

v.

Raymond D. ELKINS, Andrea
Elkins, Defendants.

Bankruptcy No. 90–10125S.
Adv. No. 90–0639S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 28, 1990.

**474**

Robert M. Greenbaum, Philadelphia, Pa., for plaintiff.

Douglas H. Weiss, Philadelphia, Pa., for debtor.

Lawrence T. Phelan, Philadelphia, Pa., for defendants.

## ADJUDICATION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. FINDINGS OF FACT

1. The Plaintiff, STEPHEN RASLA-VICH, ("the Trustee"), is the Trustee of the Debtor, OLD WORLD CONE COMPA-NY ("the Debtor"). The Debtor filed the voluntary Chapter 7 bankruptcy case underlying this proceeding on January 8, 1990.

2. The instant proceeding, seeking to avoid certain allegedly preferential transfers to the Debtor's President, Defendant RAYMOND D. ELKINS ("Elkins"), and Elkins' wife, ANDREA ELKINS ("Andrea") (Elkins and Andrea are collectively referenced as "the Defendants"), was filed on July 30, 1990, and tried on September 13, 1990.

3. The transfers in issue were the following:

    a. Count I—A payment of July 31, 1989, of $12,300 to Andrea, recorded on the Debtor's General Ledger as a payoff of a Note in her favor dated January 1, 1987.

    b. Count II—Payments on the following dates and amounts to Elkins, recorded on the Debtor's General Ledger as payoffs of a Note in his favor dated January 1, 1987:

| | | |
|---|---|---|
| (1.) April 12, 1989 | — | $1,148.12 |
| (2.) April 15, 1989 | — | 2,076.21 |
| (3.) May 15, 1989 | — | 3,804.74 |
| (4.) July 3, 1989 | — | 8,892.72 |
| (5.) July 24, 1989 | — | 943.67 |
| | | $16,865.46 |

    c. Count III—A payment of July 3, 1989, of $30,000 to Elkins, recorded on the Debtor's General Ledger as a payoff of a Note in his favor dated March 31, 1989.

4. The Defendants ultimately stipulated that all of the requirements of 11 U.S.C. § 547(b) were present except a mild contention that the payments in issue were actually compensation to Elkins for his services as President and therefore did not meet the requirements of 11 U.S.C. §§ 547(b)(1) and (b)(2); and a much more serious contention that the Debtor was not insolvent at the times of any of the transfers and that therefore the requirement of 11 U.S.C. § 547(b)(3) was not satisfied. The Defendants did not persist in asserting any defenses to this proceeding under 11 U.S.C. § 547(c).

5. The Trustee's witnesses at trial were (1) Herbert Rosenberg ("Rosenberg"), an accountant who is Treasurer and part-owner of Koala Cone Company ("Koala"), previously a competitor of the Debtor in its sole business of preparing waffle mix for ice-cream cones. Koala purchased all of the stock of the Debtor from Elkins in 1987 for $240,000 and thereafter hired Elkins as the Debtor's President under an employment contract for five years at an annual salary of $100,000; and (2) S. Stanton Orlow ("Orlow"), a certified public accountant who handled the Debtor's financial matters, and who is also a partner of Rosenberg in an accounting firm. The Defendants' sole witness was Elkins.

6. Rosenberg testified that the Debtor had an outstanding loan of about $150,000

from Key Bank ("Key") as of the date of Koala's purchase of the Debtor. Thereafter, Key indicated that it wished to "rest" this loan, and Rosenberg accordingly made a loan from Continental Bank ("Continental") to pay off Key. No documents referencing the Continental loan were produced, but the borrower was apparently Koala, and Rosenberg and another associate were apparently guarantors on this loan.

7. Rosenberg thereafter negotiated a further loan from Seafirst National Bank ("Seafirst"), apparently secured by the Debtor's assets, the proceeds of which he intended to use to pay off the Continental loan. However, Elkins subsequently advised Rosenberg that he used the proceeds of the Seafirst loan for the Debtor's operations, leaving Rosenberg to personally pay off the Continental guarantee.

8. Rosenberg suggested that Elkins misused the Debtor's funds and improperly left him to bear the Continental obligation. He also testified that the combination of the Seafirst loan and the outstanding Continental loan upon the Debtor and Koala led to Rosenberg's conclusion that it was necessary to file bankruptcy cases for both Koala and the Debtor. Furthermore, Rosenberg testified that he had filed a proof of claim in the amount of $162,000 in the Debtor's case to compensate him for paying off the Continental loan, plus interest.

9. The Debtor's Schedules, bearing Elkins' signature, recited assets of $202,-392.48 and liabilities, including an alleged debt of $150,000 to Continental, totalling $444,367.82.

10. Elkins testified, however, that he signed the papers accompanying the bankruptcy Schedules in blank, in November, 1989, at the request of Rosenberg and counsel in the case, Astor, Weiss & Newman ("Astor"). He denied ever advising Astor that Continental was a creditor of the Debtor. This testimony was credible.

11. Orlow identified a Balance Sheet of the Debtor as of September 30, 1989, which showed a deficit of assets relative to liabilities of $10,576. However, on cross-exami-

nation, Orlow was confronted with another Balance Sheet of the same date showing a positive value of the Debtor of $27,198. Orlow testified that one of the two statements was a corrected version of the other and that "probably" the Balance Sheet showing the deficit was the corrected version. Elkins subsequently testified that the version showing the positive value was the corrected version of this Statement.

12. Orlow also identified, on cross-examination, a Balance Sheet of the Debtor dated June 30, 1989. This document showed a positive value of the Debtor of $30,028 as of June 30, 1989, and a $171 deficit as of March 31, 1989. However, Orlow maintained that the Debtor was clearly insolvent on all of the foregoing dates because the Continental obligation of $150,000 or more should have been appended as a liability to the balance sheets.

13. Elkins testified that, subsequent to the bankruptcy filing, he had personally redeemed most or all of the Debtor's equipment from Seafirst, which had seized it upon default in its loan, and had paid off most of the Debtor's creditors in the course of his operation of Elkins Distribution, his own newly-formed ice-cream waffle-cone manufacturing business. However, he had not paid off the loan to Continental, since he claimed that it was not the Debtor's obligation. Elkins characterized the business as historically and presently profitable.

14. Elkins also conceded that, as the Debtor's President, he had issued directives to reduce his compensation and to designate the payments to him and his wife on the Notes as repayments of loans. His testimony therefore failed to support his counsel's hypothesis that the loan repayments in issue were in lieu of compensation.

15. On August 30, 1990, after service of the Complaint in this proceeding, Elkins moved to dismiss the underlying bankruptcy case on the grounds that the filing was engineered and tainted by the actions of Rosenberg and Astor described at Finding of Fact 10, page 475 *supra,* and that he had repaid most of the Debtor's debts, ren-

dering the filing unnecessary. The hearing on this motion was expedited to the date of the trial. However, this rather transparent effort by the Defendants to sidestep this proceeding was opposed by the Trustee and Rosenberg, and motion was withdrawn before the trial's outset.

## B. CONCLUSIONS OF LAW

1. The instant matter is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which we can both hear and determine.

2. The testimony of Elkins did not support his own counsel's hypothesis that the elements of 11 U.S.C. §§ 547(b)(1) and (b)(2) were absent. There is no contest that the Defendants were "insiders" of the Debtor, see 11 U.S.C. §§ 101(30)(B)(ii), (iii), (v), and that the one-year preference-period set forth in 11 U.S.C. § 547(b)(4)(B) is applicable. Therefore, the sole issue is whether the insolvency requirement of 11 U.S.C. § 547(b)(3) was satisfied as of the dates that the transfers in issue were made.

■ 3. The burden of proving that the Debtor was insolvent, as of any date relevant to the instant proceeding, is upon the Trustee, because (1) the dates of all of the transfers were outside of the period 90 days prior to the bankruptcy filing; and (2) the Defendants have presented sufficiently substantial evidence that the Debtor was solvent on all pertinent dates to neutralize the presumption of insolvency set forth in 11 U.S.C. § 547(f).

The Trustee relies upon 11 U.S.C. § 547(f), which provides as follows, to establish that there is a presumption in his favor regarding insolvency in reference to the instant transfers:

(f) For the purposes of this section, the debtor is presumed to have been insolvent on or during the 90 days immediately preceding the date of the filing of the petition.

■ All of the transfers in issue occurred between April 12, 1989, and July 31, 1989. Therefore, they occurred within the one-year preference period established by 11 U.S.C. § 547(b)(4)(B), which is applicable here. See Conclusion of Law 2, page 476 supra. However, equally as clearly, they all occurred outside of the 90–day period referenced by § 547(f). Numerous authorities have uniformly followed the holding of a decision of this court, In re Camp Rockhill, Inc., 12 B.R. 829, 833 (Bankr.E.D.Pa. 1981), that

the presumption of insolvency applies only during the ninety days immediately preceding the date of the filing of the petition. Hence, because the trustee is challenging the transfer to an alleged insider that occurred more than ninety days before the filing of the petition, the presumption is of no apparent assistance. Therefore, the trustee must establish the debtor's insolvency on the date the transfer was made. Constructora Maza, Inc. v. Banco dePonce, 616 F.2d 573, 577 (1st Cir.1980); Matter of PRS Products, Inc., 574 F.2d 414 (8th Cir.1978); American Nat'l Bank [& Trust Co. v. Bone], 333 F.2d [984] at 984 [sic—should be 987 (8th Cir.1964) ]; Mizell [v. Phillips ], 240 F.2d [738], at 738 [sic—should be 740–41 (5th Cir.1957) ]; Interstate National Bank v. Luther, 221 F.2d 382, 391 (10th Cir.1955); Arkansas Oil & Mining Co. v. Murray Tool & Supply Co., 127 F.2d 564 (8th Cir.1942); Everett v. Warfield Mining Co., 37 F.2d 328 (4th Cir.1930); Denaburg [v. Post Welding Supply Co.], 7 B.R. [274,] at 274 [sic—should be 275 (N.D.Ala.1980) ].

See, e.g., Dent v. Martin, 86 B.R. 290, 291 (S.D.Fla.1988); In re Trans Air, Inc., 103 B.R. 322, 325 (Bankr.S.D.Fla.1988); In re F.H.L., Inc., 91 B.R. 288, 294 (Bankr.D.N.J. 1988); and In re Huizar, 71 B.R. 826, 832 (Bankr.W.D.Tex.1987).[1]

In addition, since the Defendants have presented substantial evidence that the Debtor may have been solvent at the times that the transfers were made, it appears that the effect of the presumption was, in

---

1. Unfortunately, the Defendants' counsel saw fit to direct an unsolicited letter arguing this point to us later in the day of September 13, 1990. To have done so without obtaining the approval of opposing counsel and the court was improper. Compare In re Jungkurth, 74 B.R. 323, 325–26 (Bankr.E.D.Pa.1987), aff'd, 87 B.R. 333 (E.D.Pa. 1988).

any event, overcome. The majority rule as to the working of 11 U.S.C. § 547(f) is clearly set forth as follows in *In re Koubourlis*, 869 F.2d 1319, 1322 (9th Cir.1989):

For evidence of a debtor's insolvency, the trustee enjoys the presumption that, for purposes of avoiding a preferential transfer, "the debtor is presumed to have been insolvent on or during the 90 days immediately preceding the date of the filing of the petition [in bankruptcy]." 11 U.S.C. § 547(f). This presumption is defined in Fed.R.Evid. 301 and requires the party against whom the presumption exists, ... to come forward with some evidence to rebut the presumption, *although the burden of proof remains on the party in whose favor the presumption exists, ... See* 11 U.S.C. § 547(f) advisory committee's note. Therefore, in the absence of evidence to rebut the presumption, Koubourlises were entitled to rely on the § 547(f) presumption to establish their insolvency. *If Akers came forward with evidence to meet or rebut the presumption, the burden of persuasion would be on the Kourbourlises to establish insolvency. Matter of Emerald Oil Co.*, 695 F.2d 833, 838 (5th Cir. 1983). However, Akers must show evidence of Kourbourlises solvency. A speculative showing, such as simply questioning the debtor's accounting methods, is insufficient. *Id.* at 839 (emphasis added).

2. Federal Rule of Evidence 301 provides:

In all civil actions and proceedings not otherwise provide for by Act of Congress or by these rules, *a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non persuasion, which remains throughout the trial upon the party on whom it was originally cast* (emphasis added).

*Accord, e.g., In re Taxman Clothing Co.*, 905 F.2d 166, 168 (7th Cir.1990); *Clay v. Traders Bank of Kansas City*, 708 F.2d 1347, 1351 (8th Cir.1983); and *Emerald Oil, supra*, 695 F.2d at 837–38.

We concede that, in *In re Art Shirt Ltd., Inc.*, 68 B.R. 316, 322 (Bankr.E.D.Pa.1986), *aff'd*, 93 B.R. 333 (E.D.Pa.1988), we stated that

our tendency is against the "bursting bubble" theory and more towards the view that the presumption casts weight on the side of the Trustee at any point in the decision-making process.

However, we now believe that this passage represented a misreading of the significance of the "bursting bubble" theory discussed in this court's prior decision in *In re American Insulator Co.*, 60 B.R. 752, 754 (Bankr.E.D.Pa.1986). The controversy over the "bursting bubble" theory identified in *American Insulator* was a dispute over whether a mere scintilla of evidence of solvency should shift the burden of proof to the trustee. There should have been no question in our mind that, if significant evidence of solvency were presented, the presumption was defeated and the burden of proof was cast upon the trustee. The suggestion in *Art Shirt* that there is *always* a presumption in favor of the trustee was contrary to not only the language of *American Insulator* and the decision of four Courts of Appeals cited at pages 476–477 *supra*, but also the following legislative history:

Subsection (f) creates a presumption of insolvency for the 90 days preceding the bankruptcy case. The presumption is as defined in Rule 301 of the Federal Rules of Evidence, made applicable in bankruptcy cases by section 253 and 254 of the bill. The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, *but the burden of proof remains on the party in whose favor the presumption exists* (emphasis added).

S.REP. NO. 95–989, 95th Cong., 2d Sess. 89 (1978); and H.R.REP. NO. 95–595, 95th Cong., 2d Sess. 375 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5875, 6331. *Accord*, FED.R.EVID. 301 (quoted at page 477 *supra*); and 4 COLLIER ON BANK-

RUPTCY, ¶ 547.06, at 547–38 to 547–39 (15th ed. 1990).

Furthermore, as the party who ordinarily would have the most readily-available access to the debtor's financial records, the trustee is logically the party who should bear the burden of ultimate proof on the issue of solvency. *See, e.g., In re Fricker,* 116 B.R. 431, 437–38 (Bankr.E.D.Pa.1990); *In re Jordan,* 91 B.R. 673, 684 (Bankr.E.D. Pa.1988); *In re New York City Shoes, Inc.,* 86 B.R. 420, 425 (Bankr.E.D.Pa.1988); and *In re Furlow,* 70 B.R. 973, 977–78 (Bankr. E.D.Pa.1987). This point is especially pertinent here, where the party most vigorously supporting the Trustee, *i.e.,* Rosenberg, is an accountant whose firm had complete access to all financial records of the Debtor and would have been expected to bring all pertinent evidence in support of insolvency to the Trustee's attention.

■ Furthermore, it must be recalled that the Trustee, as plaintiff, is asserting a right to funds from the Defendants. Generally, the burden of proof is upon a party seeking to recover funds from another to both present admissible evidence in support of his claim and to convince us that he is entitled to relief by a preponderance of all of the competent evidence produced. *See, e.g., Compagnie Des Bauxites de Guinee v. Insurance Co. of N. America,* 551 F.Supp. 1239, 1242–43 (N.D.Pa.1982); *In re Volpi, Volpi v. Volpi,* Bankr. No. 89–14612S, Adv. No. 89–1184S, slip op. at 9–10, 1990 WL 110904 (Bankr.E.D.Pa. August 2, 1990); *In re Flick,* 14 B.R. 912, 914–15 (Bankr.E.D.Pa.1981); *In re Lewis,* 80 B.R. 39, 41 (Bankr.E.D.Pa.1987); and *In re Se–Ling Hosiery, Inc. v. Margulies,* 364 Pa. 45, 48–51, 70 A.2d 854, 855–57 (1950).

We therefore conclude that the Trustee is entitled to prevail here only if he is able to establish, by a preponderance of the evidence, that the Debtor was insolvent as of April 12, April 15, May 15, July 3, July 24, and/or July 31, 1989.

4. The Trustee has failed to meet his burden of proof under the applicable "balance sheet test" as to any of the dates in issue.

■ There is no dispute that the "bankruptcy" test for insolvency, *i.e.,* the "balance sheet test" measuring whether the debtor's liabilities exceed its assets, is applicable to preference actions. *See, e.g., Taxman, supra,* 905 F.2d at 170; *In re Joshua Slocum, Ltd.,* 103 B.R. 610, 620–24 (Bankr.E.D.Pa.), *aff'd,* C.A. No. 89–6490 (E.D.Pa. Oct. 25, 1989); *Art Shirt, supra,* 68 B.R. at 322; *American Insulator, supra,* 60 B.R. at 753–54; and *Camp Rockhill, supra,* 12 B.R. at 833. *Compare In re Fleet,* 89 B.R. 420, 424–25 (E.D.Pa.1988) (broader "common law" insolvency test applies in state-law fraudulent-conveyance action). Therefore, the issue of insolvency as to each of the dates in question is resolved by ascertaining whether the Debtor's liabilities exceeded the assets as of each of these pertinent dates.

It is because the evidence on this point is so beclouded that we have addressed the issue of the burden of proof so extensively. Where the evidence is scanty and inconclusive, the burden of proof becomes decisive and requires that judgment be entered against the party bearing this burden.

■ We must reject the Trustee's contention that the Continental obligation must be considered as a liability of the Debtor. It is not included on any of the Debtor's Balance Sheets, including either of the most recent September 30, 1989, Statements, whichever is the corrected version. The inclusion on the Schedules is rendered insignificant by Elkins' explanation of how these documents were executed, which we credit. The fact that Rosenberg's proof of claim, in lieu of the Continental obligation, has not been objected to may render the claim to be "deemed allowed," 11 U.S.C. § 502(a), for distribution purposes, but it does not bind Elkins, a party not in privity to the Trustee, to the conclusion that the claim is valid. *See* page 479 *infra.* We are therefore left to consider the Balance Sheets, which are part of the record, unadjusted, as the most reliable measurements of whether the Debtor was or was not insolvent at the respective significant points of time.

■ The Balance Sheets indicate as follows with respect to the following respective dates:

March 31, 1989—default of $171

June 30, 1989—surplus of $30,028

September 30, 1989—either a surplus of $27,198 or a deficit of $10,576, depending on which Balance Sheet we accept.

It seems clear that the Debtor was most likely solvent on July 3, 1989, just three days after the publication of the June 30, 1989, Balance Sheet showing a surplus of $30,028. July 3, 1989, was the date of $38,389.72 of the total transfers of $59,-165.46.

We consider the evidence addressing which of the September 30, 1989, Statements was the proper or corrected version to be equal. If the version showing a surplus of $27,198 was the correct version, it seems likely that the Debtor was solvent throughout the entire period between June 30, 1989, and September 30, 1989, and that therefore it was solvent as of July 24 and July 31, 1989, when a total of $13,243.67 was transferred. Since the Trustee has not presented evidence sufficient to tip the scales in his favor as to which is the proper Statement, we refuse to find that the Debtor was insolvent on these dates.

The evidence of the Debtor's insolvency as of April and May is equally inconclusive. The March 31, 1989, balance is so close to zero that, even as soon thereafter as April 12, 1989, the Debtor may well have been solvent. As time passed and June 30, 1989, by which date the Debtor was clearly solvent, approached, the chances that the Debtor was insolvent grew dimmer. Since the burden of proof was upon the Trustee, we cannot conclusively find that the Debtor's insolvency was proven as to any of the dates in issue. Therefore, the Trustee's claims must all be rejected.

We should also add that Elkins' testimony that the Debtor was historically a profitable enterprise and that it has again become profitable under his tutelage supports our decision on an equitable basis. He has paid off most of the Debtor's creditors. Therefore, the only claimant seeking distribution would probably be Rosenberg.

However, his claim would appear vulnerable to an attack by Elkins on the ground that it was not an obligation of the Debtor. While we do not reach the issue of validity of this claim, we observe that the Defendants have standing to attack it if the Trustee refuses to do so. *See In re Gulph Woods Corp.*, 116 B.R. 423, 428–30 (Bankr. E.D.Pa.1990); and *In re Morrison*, 69 B.R. 586, 589 (Bankr.E.D.Pa.1987). If Rosenberg is alleging that Elkins personally misappropriated funds from the Debtor, asserting a direct claim against Elkins is an avenue which remains open to him even if his claim is ultimately disallowed.

## C. ORDER

AND NOW, this 28th day of September, 1990, after a trial of September 13, 1990, judgment is entered in favor of the Defendants, RAYMOND D. ELKINS and ANDREA ELKINS, and against the Plaintiff STEPHEN RASLAVICH, Chapter 7 Trustee. The Complaint is therefore DISMISSED in its entirety.